[Civ. No. 10966. Fourth Dist., Div. Two. Nov. 24, 1971.]

JOSEPH G. KUCHTA et al., Plaintiffs and Respondents, v.
ALLIED BUILDERS CORPORATION, Defendant and Appellant.

542

## COUNSEL

Bernard Mattison for Defendant and Appellant.

Joseph L. Armijo, Jr., for Plaintiffs and Respondents.

## OPINION

**KERRIGAN, Acting P. J.**—The plaintiffs, Joseph G. Kuchta and Gertrude Ann Kuchta, sued the defendants Allied Builders Corporation [Allied] and its franchisee, Raphael [Ralph] Weiner,[1] for the purpose of re-

---

[1]Other defendants were also sued but the principal defendants were Allied Builders and Weiner.

covering damages for fraud and breach of a building contract wherein the franchisee agreed to construct an outdoor patio and living area in the rear yard of plaintiffs' home. The jury returned with the following verdicts: (1) $5,585 in general damages against Allied and Weiner jointly and severally; (2) $3,750 in punitive damages against Allied alone; and (3) an additional $3,750 punitive damages against Weiner individually. Judgment was entered accordingly, and only Allied appeals.

Allied raises the following issues in seeking to invalidate the judgment: (1) Weiner was an independent contractor, not an agent and, therefore, Allied may not be held liable for Weiner's fraud or breach of contract (2) the trial court improperly denied Allied's motion to compel plaintiffs to make an election between it and Weiner; (3) the punitive damage award against the franchisor was invalid as a matter of law; and (4) the court erred in refusing to render an instruction on damages offered by the defendants.

Weiner was a franchisee of Allied Builders. He was engaged in the construction business in the Orange County area with his principal office in Anaheim. Plaintiffs owned a home in nearby Los Alamitos. In August 1966 they saw a sign on the lawn of a neighbor's home indicating that Allied Builders had just constructed and completed an outdoor living area on the premises. They also saw Allied Builders' advertisement in their local paper.

Plaintiffs desired an outdoor living area added on to their home and attempted to find an Allied listing in their local phone book. Being unable to reach a local outlet, plaintiffs phoned Allied Builders in Los Angeles, and the party answering the phone responded, "Allied Builders." Plaintiffs talked to the vice-president of Allied Builders[2] and explained that they wanted an addition constructed on their home. The vice-president told them they should contact the branch office in Anaheim and gave plaintiffs Weiner's number. Plaintiffs phoned the Anaheim office and two days later Weiner appeared. He represented that he was from Allied Builders.

On September 2, 1966, plaintiffs entered into a written agreement with Allied Builders System, wherein the franchisee, as contractor, agreed to furnish all labor, materials, equipment and supplies necessary to construct the outdoor living area at the rear of plaintiffs' home for the sum of $5,671. Plaintiffs approved plans and specifications relating to the addition. These

---

[2]The Los Angeles based firm was then known as Construction Design, Inc., dba Allied Builders System, and is now known as Allied Builders Corporation. Construction Design, Inc. dba Allied Builders System was an additional party-defendant in plaintiffs' action.

plans called for the construction of a covered patio. The plans contained the provision that all construction would conform with local and state codes and that Allied would obtain the necessary building permits for the improvement.

The plans were submitted by Weiner to the Orange County Building and Safety Department, but were not approved. Plaintiffs' lot was zoned so that no structure other than a six-foot fence could be built within five feet of any boundary between two properties. The roof and side of the proposed patio were violative of the Orange County zoning ordinance in that they would extend to the west property line itself. The plans also called for a plexiglass structure more than six feet in height which would shade the patio. This structure would be illegal in that it, too, would extend to the property line.

Without plaintiffs' knowledge or consent, a second set of plans was presented to the building department, omitting the illegal roof, side supports, and shade structure. The amended plans depicted only an uncovered patio living and dining area. Plaintiffs were never informed before construction commenced that the building department had disapproved the initial plans calling for a roof over the patio. Nevertheless, Weiner's general manager and responsible managing officer [R.M.O.]—the person designated in the state contractor's license as franchisee—had the roof and other improvements constructed in close proximity to the wall with full knowledge that such construction was in violation of both the building codes and zoning ordinances. The addition was completed as orginally agreed upon in December 1966.

After completion, the roof over the addition began leaking and plaintiffs called Allied's vice-president in the Los Angeles main office and voiced their complaint. Weiner called that evening and made arrangements to repair the roof.

In May 1967 plaintiffs received a notice from the Orange County Building and Safety Department advising them that their roof and other improvements along the west wall were in violation of the code and ordering the removal thereof. Eventually it became necessary for plaintiffs to demolish all the improvements along the west wall and restore the property to its original condition.

■ Allied Builders first attacks the $5,585 compensatory damage award on the ground that the evidence is insufficient to establish an agency relationship between it and Weiner. The franchise agreement contained a provision that no agency relationship was created by the grant of the fran-

chise. In effect, Allied Builders is contending that Weiner was an independent contractor and, therefore, it could not be vicariously liable for either his breach of contract or fraud. On the other hand, the trial court instructed the jury on the elements of agency, and the jury obviously determined that Weiner was either an actual or ostensible agent.

The law is clear that a franchisee may be deemed to be the agent of the franchisor. (*Shoopman* v. *Pacific Greyhound Lines,* 169 Cal.App.2d 848, 856 [338 P.2d 3]; *Nichols* v. *Arthur Murray, Inc.,* 248 Cal.App.2d 610 [56 Cal.Rptr. 728]; *Beck* v. *Arthur Murray, Inc.,* 245 Cal.App.2d 976 [54 Cal.Rptr. 328].) In the field of franchise agreements, the question of whether the franchisee is an independent contractor or an agent is ordinarily one of fact, depending on whether the franchisor exercises complete or substantial control over the franchisee. (*Holland* v. *Nelson,* 5 Cal.App. 3d 308, 313 [85 Cal.Rptr. 117]; *Nichols* v. *Arthur Murray, Inc., supra,* pp. 612-614.)

In the case under review, there was evidence that Allied Builders exercised strong control over Weiner. The franchise agreement itself gave Allied Builders the right to control the location of the franchisee's place of business, to prescribe minimum display equipment, to regulate the quality of the goods used or sold, to control the standards of construction, to approve the design and utility of all construction, and to assign persons to see that the franchisee performed according to the franchisor's standards. Additionally, Allied enjoyed the right of inspection over the franchisee's plans and specifications, the franchisee's work in progress, and finished jobs, as well as the right to train Weiner's salesmen. Moreover, Allied Builders was entitled to share in the profits of the franchisee and to audit Weiner's books. These elements of control were sufficient to support an implied finding of agency. (*Holland* v. *Nelson, supra,* 5 Cal.App.3d 308, 313.)

The trial court also properly instructed the jury on the doctrine of ostensible agency. An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is really not employed by him. (Civ. Code, § 2300.) Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess. (Civ. Code, § 2317.)

There was formidable evidence establishing Weiner's ostensible authority. When plaintiffs first contacted Allied Builders in Los Angeles, they were referred by the vice-president to Allied's "branch office" in Anaheim. The vice-president characterized the Los Angeles office as the "main office."

Both the main office and the branch office answered their phone in the same manner, to wit, "Allied Builders." Both the franchisor and the franchisee did business under the same name at that time, to wit, Allied Builders System. The contract listed "Allied Builders System" as the contractor. Both offices employed common advertising in newspapers and in the yellow pages of the telephone book. Calls to the main office brought swift and certain reaction from the franchisee. Weiner represented to plaintiffs that the firm had been in business for over 50 years, which covered the entire span of Allied's experience in the building business. The plaintiffs' check for payment on the contract price was endorsed and deposited to the account of "Allied Builders System." Consequently, there was ample evidence that Allied Builders either intentionally, or by want of ordinary care, led third persons, including plaintiffs, to believe that the franchisee and Allied Builders were part of the same business operation.

While Allied Builders argues that no agency relationship existed by virtue of the franchise agreement, in that the agreement itself stated that no such agency relationship was created, the declarations of the parties in the agreement respecting the nature of the relationship are not controlling. (See *Nichols* v. *Arthur Murray, Inc., supra,* 248 Cal.App.2d 610, 613; *Shoopman* v. *Pacific Greyhound Lines, supra,* 169 Cal.App.2d 848, 853.)

■ Allied also takes the position that the plaintiffs elected to hold Weiner alone responsible in that they contracted solely with him and, therefore, are estopped from holding the principal liable. There is authority that if, at the time the contract is made in the name of the agent, the third party has knowledge of the identity of the principal and nevertheless proceeds to contract with the agent, there is no "undisclosed" principal, and this has sometimes been considered as an election to hold the agent alone. (*Ferguson* v. *McBean,* 91 Cal. 63, 72 [27 P. 518].) However, it is equally well-settled that knowledge of the identity of the principal is not conclusive, and the election to hold the agent must be established by other evidence of actual intent. (*Pacific Ready-Cut Homes, Inc.* v. *Seeber,* 205 Cal. 690, 696 [272 P. 579] [limiting the holding of *Ferguson* v. *McBean, supra*].) The evidence herein reflects that both the franchisor and franchisee held themselves out to the public as one construction firm and that the plaintiffs contracted with Allied on that basis. Consequently, the trial court was correct in not requiring the plaintiffs to make an election.

■ The crucial issue on appeal is the propriety of the award of punitive damages against Allied. Allied argues that: (1) this is not a proper case for an award of punitive damages in that the suit arose from a breach of contract; and (2) even if punitive damages are properly in issue, they

should have been awarded only against the franchisee [Weiner] not against the franchisor [Allied] since an employer is not ordinarily liable in punitive damages for an employee's fraud.

As to the first contention, Allied concedes that Weiner committed fraud when he induced plaintiffs to enter into the contract, but urges that section 3294 of the Civil Code prohibits an award of punitive damages where the fraud is in connection with a breach of contract. The section states: "In an action for a breach of an obligation *not arising from contract,* where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Plaintiffs plead two causes of action in their complaint: one count alleged a breach of contract; the other charged that defendants fraudulently induced plaintiffs to enter into the contract. Although punitive damages may not be awarded where defendant merely breaches a contract (*Freedman* v. *The Rector,* 37 Cal.2d 16, 21-22 [230 P.2d 629]; Civ. Code, § 3300), such damages may be awarded where defendant fraudulently induces plaintiff to enter into a contract. (*Horn* v. *Guaranty Chevrolet Motors,* 270 Cal.App.2d 477, 484 [75 Cal.Rptr. 871]; *Squires Dept. Store, Inc.* v. *Dudum,* 115 Cal.App.2d 320, 323 [252 P.2d 418].) Fraudulent inducement to enter into a contract constitutes a tort. The trial court correctly instructed the jury that punitive damages could be awarded only for fraud and that only compensatory damages could be awarded for a breach of contract.

■ Allied contends that even if punitive damages were properly at issue, there is no legal justification for an award of such damages against a franchisor. ■ Generally, an employer is not liable in punitive damages for the fraudulent acts of its agents or employees unless the employer has authorized the acts, the rationale being that punitive damages will have no deterrent effect if awarded against one who was not responsible for the fraud. (Witkin, Summary of Cal. Law (1960) Torts, § 398, pp. 1603-1604.) However, there are exceptions to such rule of nonliability where: (1) the employer knowingly ratifies the fraud after its commission (*Lowe* v. *Yolo County etc. Water Co.,* 157 Cal. 503, 511-512 [108 P. 297]), or (2) where the fraud was committed by an employee or agent acting in a managerial capacity. (*DiGiorgio Fruit Corp.* v. *AFL-CIO,* 215 Cal.App.2d 560, 575-576 [30 Cal.Rptr. 350]; *Rosenberg* v. *J. C. Penney Co.,* 30 Cal. App.2d 609, 623 [86 P.2d 696]; see Witkin, Summary of Cal. Law (1960) § 398, p. 1604.) In the latter instance, imposition of liability upon the employer for the fraud of his officers and executives will encourage careful selection and control of persons placed in important management positions. ■ While a majority of jurisdictions extend such liability to will-

ful misconduct by *any* employee (see Prosser, Law of Torts (3d ed. 1964) p. 12), the rule in California is that liability without ratification or authorization should be limited to those acting in a managerial capacity (*DiGiorgio Fruit Corp.* v. *AFL-CIO, supra; Rosenberg* v. *J. C. Penney Co., supra.*)

Weiner was an agent or ostensible agent of Allied. It is clear that he acted in an important management position. Therefore, the only question remaining is whether a franchisor may be liable in punitive damages for a franchisee's fraud to the same extent as it would for the fraud of an employee, officer or manager.

The franchise agreement provided a plethora of controls and supervisory privileges on behalf of the franchisor. Allied enjoyed a right to cancel the franchise relationship at any time by reason of Weiner's insolvency, failure to maintain sufficient gross sales, or failure to comply with any contractual obligation, including Weiner's duty to comply with all building codes and to obtain necessary building permits. The most significant control an employer has over the acts of an official is the right to terminate his employment for misconduct. Allied had even this control over Weiner. Allied also required the franchisee to make a certain amount of gross sales yearly and the franchise royalty was based entirely upon gross receipts. Thus, Allied received a financial benefit from fraudulently induced contracts. In light of the foregoing indicia of control, it is difficult to distingush between this agency relationship and that of any managerial official. Weiner may be equated in all respects with an employee, officer or manager. The punitive damage award against Allied must be sustained.

Finally, Allied claims that the trial court was wrong in refusing to instruct the jury to the effect that plaintiffs' damages were to be limited to their actual damages on a contract theory. (See Civ. Code, §§ 3300-3301.) However, in view of our discussion on the measure of damages for fraud, the trial court properly instructed the jury as to the measure of damages on both theories.

The judgment is affirmed.

Gabbert, J., and Kaufman, J., concurred.