**Joe SMITH and Georgie Smith, Individually, and as Representatives of the Estate of Timothy G. Smith, Deceased Appellants,**

v.

**FOODMAKER, INC., Appellee.**

No. 2–95–282–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 8, 1996.

David H. Stokes, Law Firm of David H. Stokes, Martin L. Peterson, Stephenville, for Appellant.

George S. McCall, Ellen Greer, Kern and Wooley, Irving, for Appellee.

Before RICHARDS, BRIGHAM and HOLMAN, JJ.

## OPINION

BRIGHAM, Justice.

Appellants Joe and Georgie Smith ("the Smiths") contend the trial court erroneously granted a take-nothing summary judgment for appellee Foodmaker, Inc. in a wrongful death claim brought by the Smiths following the murder of their son at a Fort Worth restaurant. Because we find the sole point of error to be without merit, we affirm.

## BACKGROUND

The Smiths' son Timothy worked at a Jack–in–the–Box restaurant in Fort Worth. Timothy was fatally shot by co-worker Derrick Crowe during a 1994 robbery of the restaurant by Crowe and others. The Smiths sued: Foodmaker, the franchisor/lessor of the premises; Jack–in–the–Box, Inc., a wholly-owned subsidiary of Foodmaker; MDE, Inc., the franchisee/lessee of the premises [1]; and Michael Elliott, the president of MDE. The Smiths alleged that the various defendants had provided inadequate security at the restaurant despite previous criminal activity in and around the restaurant and that the defendants had negligently hired Crowe. The Smiths sought relief under common law, the Texas Survival Act, and the Texas Wrongful Death Act (section 71.002 of the Civil Practice and Remedies Code).

Foodmaker and Jack–in–the–Box filed a motion for summary judgment claiming that they owed no legal duty to Timothy or to the Smiths. In the motion, Foodmaker argued that the franchise agreement between it and MDE clearly stated that MDE is an independent contractor, rather than agent, partner,

1. The original franchise agreement was between Foodmaker and Cibolo Food Company, the cor-

porate predecessor of MDE. In October of 1990, MDE purchased the franchise from Cibolo.

joint venturer, or employee of Foodmaker. Jack–in–the–Box was not a party to the franchise or lease agreements. The Smiths' claim against Jack–in–the–Box was dismissed without prejudice in July of 1995. The Smiths settled their claims against MDE, Inc. and Elliot. Summary judgment for Foodmaker was granted in October of 1995.

## POINT OF ERROR

The Smiths contend that the trial court erred in granting summary judgment for Foodmaker and claim that there were disputed issues as to material facts, particularly whether MDE was the agent of Foodmaker. The Smiths argue that Foodmaker's vicarious liability should have been determined under California law because the contract between Foodmaker and MDE states that it is to be construed under California law. They concede that Texas courts have generally limited the franchisor's liability in cases such as this by evaluating who had specific control over the safety and security of the premises. *Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 21 (Tex.1993). But, the Smiths argue, California courts have not yet rejected the liability theory based upon the general right of control over operations. *See Kuchta v. Allied Builders Corp.,* 21 Cal.App.3d 541, 548, 98 Cal.Rptr. 588, 591 (1971); *Nichols v. Arthur Murray, Inc.,* 248 Cal.App.2d 610, 56 Cal.Rptr. 728 (1967).

The Smiths then argue that whether judged under *Kuchta* or *Exxon Corp.,* the franchise agreement between Foodmaker and MDE at least raised an issue of fact as to whether Foodmaker was jointly liable for MDE's negligence. The Smiths point out that under the "standards of operation" portion of the franchise agreement, Foodmaker retained "sole and absolute discretion ... to establish ... standards, specifications and procedures" for MDE's equipment, restaurant facilities, and service format. The Smiths also rely on contract language which stated that improvements to the restaurant premises had to be authorized in writing by Foodmaker, that the franchisee was to follow Foodmaker's training program for its employees, that Foodmaker had control over the hours of operation of the restaurant, and that Foodmaker retained the right to inspect the restaurant's operations.

### Conflicts of Law

■ Foodmaker contends that Texas, and not California, law applies despite the fact that the franchise agreement contained a choice of law provision which stated that any dispute should be construed by the laws of California. Foodmaker argues that because the lawsuit filed by the Smiths is a tort action, rather than a contract dispute between the franchisor and the franchisee, and because neither Timothy nor the Smiths was a party to the franchise agreement, Texas law should be used to evaluate the summary judgment. We agree.

It is well established that the "most significant relationship" test of the Restatement (Second) of Conflicts governs all conflict of law case tort claims. *See Gutierrez v. Collins,* 583 S.W.2d 312 (Tex.1979). According to the Restatement of Conflicts:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971). The Restatement also requires consideration of factual matters:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which,

with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971).

Timothy's death occurred in Fort Worth, Texas. Crowe and Timothy were both employees of MDE, a Texas corporation, and it is undisputed that all hiring and security decisions were made by MDE. The Smiths are Texas residents, and Michael Elliott, the president of MDE is a Texas resident. Foodmaker is a Delaware corporation doing business throughout the United States with a regional office in Texas. Thus, the parties have significant relationships with the State of Texas. We conclude that the overwhelming majority of significant contacts are in Texas and that Texas law should apply.

## THE SUMMARY JUDGMENT STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that movant is entitled to judgment as a matter of law. See TEX.R. CIV. P. 166a(c); Cate v. Dover Corp., 790 S.W.2d 559, 562 (Tex.1990); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, Acker v. Texas Water Comm'n, 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue of a material fact are resolved against movant. Cate, 790 S.W.2d at 562; Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. Great Am., 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex.1995); Montgomery v. Kennedy, 669 S.W.2d 309, 311 (Tex.1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. Great Am., 391 S.W.2d at 47.

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of movant's cause of action or defense as a matter of law. City of Houston, 589 S.W.2d at 678.

## ANALYSIS UNDER TEXAS AUTHORITY

### Negligent Security

The Texas Supreme Court has held that in cases alleging negligence in maintaining a safe workplace, the inquiry must focus on who has specific control over the safety and security of the premises. Exxon Corp., 867 S.W.2d at 23. The Exxon Corp. test has since been applied to a lawsuit against a realty company which possessed the authority to elect most of the members to a condominium homeowner's association when a resident was attacked and kidnapped from the condominium complex. See Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195 (Tex.1995). Exxon Corp. has also been used in evaluating the liability where a convenience store employee was the victim of an armed robbery. Brooks v. National Convenience Stores, Inc., 897 S.W.2d 898 (Tex.App.—San Antonio 1995, no writ). Notably, the Smiths concede that Exxon Corp. outlines the test in negligent security litigation.

Foodmaker's Regional Franchise Consultant Art Robison, stated that Foodmaker was not aware of any crime, violence, or security problems at the site of the shooting before the robbery-murders in question. Foodmaker did not require franchisees to report any

security problems, nor did it direct, control, or advise MDE in terms of security. Robison made it clear that any decisions regarding the hiring of guards or installation of security cameras were left to MDE, that Foodmaker did not require MDE to seek prior approval to maintain or repair lighting, doors, or locks, and that MDE was solely responsible to maintain and repair lighting, doors, and locks.

Although the franchise agreement between Foodmaker and MDE requires the franchisee to follow "standards of operation" in a variety of areas including advertising, marketing, hours of operation and food preparation and service, the agreement does not give Foodmaker any control over the safety and security of the premises.

## Negligent Hiring

In an attempt to impose liability based upon an agency theory, the "right to control" test remains the keystone. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590–91 (Tex.1964). Under this test, the court must examine whether the alleged master/employer has the contract right to control the opposite contracting party in the details of the work to be performed. *Id.* at 591.

The undisputed summary judgment evidence establishes that Crowe was not hired by Foodmaker and that the franchise agreement considered MDE an independent contractor:

> FRANCHISEE shall be considered an independent contractor and shall not be deemed an agent, partner, joint venturer or employee of Foodmaker; and no fiduciary relationship between the parties shall be deemed to exist. FRANCHISEE shall have no right to bind or obligate Foodmaker in any way, and shall in no way represent any right to do so. Foodmaker shall have no control over the terms and conditions of employment of FRANCHISEE's employees....
>
> ....
>
> FRANCHISEE shall hire all employees of the Franchised Restaurant, be exclusively responsible for the terms of their employment, compensation and training....

Not only did Foodmaker have no right of control over the hiring practices, terms, or conditions of MDE's employees, the franchise agreement does not even contain suggestions on background screenings or criminal history investigations for applicants seeking employment from the franchisee/independent contractor.

## Agency/Joint Enterprise Liability

■ At least one of our sister courts has held that a franchise agreement should not be construed to create an agency relationship. *See O'Bryant v. Century 21 S. Central States, Inc.*, 899 S.W.2d 270, 272 (Tex.App.—Houston [14th Dist.] 1995, no writ). In reaching this conclusion, that court relied in part upon *Exxon Corp. Id.* at 271. Additionally, we have previously held that the party asserting agency must prove that the principal has the right to assign the agent's task and the right to control the means and details by which the agent will accomplish the task. *Johnson v. Owens*, 629 S.W.2d 873, 875 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.).

As excerpted above, the franchise agreement clearly states that the franchisee is an independent contractor, and the Smiths have provided no controverting summary judgment proof. Although MDE, as franchisee, was required to follow certain corporate standards, the day-to-day operation of the restaurant in question was delegated fully to MDE.

## Lessor Liability

One of our sister courts has also addressed the issue of lessor liability in a situation factually similar to the one confronting this court. In *Barnes v. Wendy's Int'l, Inc.*, 857 S.W.2d 728 (Tex.App.—Houston [14th Dist.] 1993, no writ), the franchisor owned, and leased to the franchisee, premises on which a restaurant was built. The *Barnes* court made it clear that a landlord is not responsible for any injuries sustained by a tenant or its employees which occur in areas controlled by the tenant or where the landlord has not otherwise agreed to make repairs. *Id.* at 730. There, the employee was injured after slipping in a puddle of water created by

leaking plumbing fixtures. The franchisee had the responsibility to repair the plumbing. *Id.*

The lease at issue here required MDE to keep the premises leased to it by Foodmaker in good repair. Therefore, any damaged or defective locks, doors, lights, or drive-through windows which may have contributed to the murder should have been repaired by MDE and not Foodmaker.

Although Foodmaker retained the right to inspect the restaurant to make sure that its operation as a food-service business complied with corporate requirements, and although Foodmaker had the right to repair damage caused by fire or catastrophic loss we cannot read the contract as interpreted under Texas law as making Foodmaker vicariously liable in this instance.

### ANALYSIS UNDER CALIFORNIA AUTHORITY

"The general rule is where a franchise agreement gives the franchisor the right of complete or substantial control over the franchisee, an agency relationship exists." *Cislaw v. Southland Corp.*, 4 Cal. App.4th 1284, 1288, 6 Cal.Rptr.2d 386, 388 (1992). "The question of whether the franchisee is an independent contractor or an agent is ordinarily one of fact, depending on whether the franchisor exercises complete or substantial control over the franchisee." *Kuchta*, 21 Cal.App.3d at 547, 98 Cal.Rptr. at 590. "Mere licensing of trade names does not create agency relationships either ostensible or actual." *Beck v. Arthur Murray, Inc.*, 245 Cal.App.2d 976, 981, 54 Cal.Rptr. 328, 331 (1966). California courts have found an agency relationship where the franchisor has retained controls beyond those necessary to protect and maintain its trademark, trade name, and good will and where it has retained control over the day-to-day operation of the franchise. *Nichols*, 248 Cal.App.2d at 613–14, 56 Cal.Rptr. at 731.

Although the terms of the franchise agreement required MDE to follow Food-maker's instructions regarding marketing and food preparation, we find this situation analogous to the one in *Wickham v. South-*

*land Corp.*, 168 Cal.App.3d 49, 213 Cal. Rptr. 825 (1985) where plaintiffs claimed that franchisor Southland was responsible for the death of a minor after an employee of a 7–Eleven store sold alcohol to the intoxicated youth. There, as here, the franchisee was responsible for hiring and firing all employees, setting their wages, and giving them their day-to-day instructions. *Id.* at 54, 213 Cal.Rptr. at 828. Additionally, there, as here, the franchise agreement specifically provided that the relationship between the franchisor and the franchisee was that of an independent contractor. *Id.* Even where the franchisor has instructed the franchisee on hours of operation, an agency relationship has not been established. *Cislaw*, 4 Cal.App. 4th at 1294–95, 6 Cal.Rptr.2d at 393. In short, a "franchisor's interest in the reputation of its entire system allows it to exercise certain controls over the enterprise without running the risk of transforming its independent contractor franchisee into an agent." *Cislaw*, 4 Cal.App.4th at 1291–92, 6 Cal. Rptr.2d at 391. Therefore, even if the tort claim against Foodmaker were tried under California law, summary judgment for Foodmaker would still be proper. Point of error one is overruled.

The judgment of the trial court is affirmed.