**Mohammed KHAN and Jamila Williams, Appellants,**

v.

**SHELL OIL COMPANY AND MOTIVA ENTERPRISES, L.L.C., Appellees.**

No. 06–01–00104–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 28, 2002.

Decided March 19, 2002.

Stuart J. Starry, Marta E. Montenegro, Starry & Associates, PC, Houston, for appellants.

David V. Wilson, II, Hays, McConn, Rice & Pickering, Houston, for appellees.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Mohammed Khan and Jamila Williams sued Shell Oil Company ("Shell") to recover damages resulting from personal injuries suffered by Khan when he was shot during an armed robbery at the Shell service station where he worked. The trial court granted summary judgment in favor of Shell, from which Khan and Williams now appeal.

The single issue presented for review is whether granting summary judgment was error. The propriety of rendering summary judgment is a question of law. We review de novo the trial court's decision to grant summary judgment. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

With a traditional motion for summary judgment, the movant bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). A defendant moving for summary judgment must negate at least one essential element of each of the plaintiff's theories of recovery, *Gibbs v. Gen. Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970), or plead and conclusively establish each element of an affirmative defense. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). If the moving party does not meet its burden of proof, the nonmovant has no burden and the summary judgment motion must fail. *See id.* If the moving party produces summary judgment evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence that raises a material fact issue. *Phan Son Van v. Pena*, 990 S.W.2d 751, 752 (Tex. 1999); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996). In deciding whether there is a disputed material fact issue precluding summary judgment, summary judgment evidence favorable to the nonmovant will be taken as true, every reasonable infer-

ence must be indulged in favor of the nonmovant, and any doubts resolved in the nonmovant's favor. *Nixon,* 690 S.W.2d at 548–49.

■■■■ Khan sued Shell on theories of negligence and gross negligence. Common law negligence consists of three elements: 1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately resulting from the breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536 (Tex.1975). Shell moved for summary judgment on the ground that it owed no duty to Khan. Khan alleged that Shell failed to provide him a safe place to work. The proper inquiry concerning duty in a case alleging negligence in maintaining a safe workplace focuses on who had specific control over the safety and security of the premises. *See Exxon v. Tidwell,* 867 S.W.2d 19, 23 (Tex.1993). In particular, the focus should be on who had the right to control the alleged security defects leading to the plaintiff's injuries. *See id.* Thus, whether Shell had a duty to provide a safe workplace for Khan turns on whether the company actually controlled or had a right to control those security-related matters that conceivably contributed to Khan's injuries. *See id.*[1]

■■ Shell owns the service station at which Khan was employed and injured. Shell leases the station to LA Sani, Inc., a company owned by Saleem R. Syed. Syed also acts as the manager of the station. Khan suffered an injury during an armed robbery at the service station one morning at approximately 4:00 a.m. According to Khan's affidavit, he was outside the station cleaning the service bays and emptying a trash can when a man emerged from a dark side of the building wearing a bandanna over his face and carrying a rifle. On seeing the man, Khan turned and ran toward the station. He was shot while trying to lock the door behind him.

The business relationship between Shell and Syed (through his company) is governed primarily by two documents, the lease and the dealer agreement. Shell argues that nothing in these two documents gave it a right of control over the safety and security of the gas station, that all such control was in the hands of Syed, and thus it owed no duty to Khan. Shell points out that the lease agreement required Syed to personally and actively manage the business to assure compliance with all provisions of the lease. The lease also required him to satisfy all regulatory requirements, and he was prohibited from maintaining or permitting any condition at the station that might endanger the health, safety, or well-being of anyone present at the station. In a paragraph entitled "Dealer's Independence," the dealer agreement reads:

> Dealer is an independent businessperson, and nothing in this Agreement shall be construed as reserving to Shell any right to exercise any control over, or to direct in any respect the conduct or management of, Dealer's business or operations conducted pursuant to this Agreement; but the entire control and direction of such business and operations shall be and remain in Dealer, subject only to Dealer's performance of the obligations of this Agreement.

Although Shell cites this paragraph as support for its position, Khan focuses on the words, "subject only to Dealer's performance of the obligations of this Agree-

---

1. We distinguish here between a right of control and the exercise of control. A showing of actual control is not necessary except where the right of control is not otherwise manifested. *Exxon v. Tidwell,* 867 S.W.2d 19, 21–22 n. 3 (Tex.1993).

ment," and argues that this is the exception that "swallows the rule." According to Khan, Syed managed the service station in general, but Shell reserved the right to control some security measures because Syed was obligated by the lease and dealer agreements to obtain Shell's express permission before undertaking many actions directly affecting the elements of security relevant here. Shell, in effect, had veto power over many of Syed's security-related decisions. Khan further argues that although Syed had to obtain Shell's prior permission before undertaking many security-related decisions, Shell had the right to enter the premises and make such security-related changes on its own initiative.

We agree with Shell that the contracts establish, in general, that the day-to-day operations are the responsibility of Syed. Nevertheless, who controls general operating procedures is not the relevant inquiry. *See Exxon v. Tidwell,* 867 S.W.2d at 19. We must determine who had a right to control those security-related matters that conceivably contributed to Khan's injuries. The terms of the contracts, even as understood by Shell as reflected in the testimony of its representative, support Khan's position.

Shell's representative, Brooks Herring, testified that if Syed wanted to put up new lights for greater illumination, install bullet-proof glass, or even put up a sign announcing minimal cash on hand, he would be required by the contracts to obtain Shell's permission. Similarly, if Syed wanted to install a security camera, he would need Shell's permission. Although Syed had to request permission of Shell to make certain changes related to security, Shell had the power and the right to step in at any time and make security-related changes itself, such as adding bullet-proof glass, extra lighting fixtures, or outside fencing. Herring testified that safety and

the prevention of crime were relevant considerations when designing new service stations. Yet, as stated in the contracts and understood by Herring, Syed could not remodel or alter the premises, even if directly related to security, without Shell's permission. Syed, in fact, did submit a preliminary remodeling proposal to Shell suggesting, among other things, the addition of proper exterior lighting for the express purpose of making customers feel safer. The remodeling was not authorized, even though Syed did not request that Shell finance it.

The strongest case on which Shell relies for support, *Smith v. Foodmaker, Inc.,* 928 S.W.2d 683 (Tex.App.-Fort Worth 1996, no writ), is distinguishable. In that case, the appeals court concluded that the franchisor did not retain any control over the safety and security of the premises because it was not aware of any crime, violence, or security problems at the site; it did not require the franchisee to report security problems; it did not direct, control, or advise the franchisee in terms of security; it did not make any decisions regarding the hiring of guards or installation of security cameras; and it did not require the franchisee to seek its prior approval to maintain or repair lighting, doors, or locks. *Id.* at 686–87.

■ We note that knowledge of past criminal activity at the site is not relevant to the issue of who had control over security matters at the time of the crime giving rise to the cause of action. The second factor noted by the court in the *Smith* case, the duty to report security problems, existed in our case by the express terms of the contracts. As to directing, controlling, or advising a franchisee on security, Shell undertook to train its dealers on topics including security and required such training of them. Shell could even require a franchisee to provide additional staff at a

service station, possibly even a security guard. And, although the contracts imposed on Syed the duty to keep the premises illuminated, Shell had the right to install exterior lighting or security cameras, which Syed could not do without Shell's prior permission.

Shell clearly had the right to exercise control over some security-related matters. It is reasonable to infer from this fact that these matters may have been causally related to the robbery in which Khan was shot. Therefore, there is some evidence of facts that may have imposed a duty on Shell. Thus the summary judgment was improper.

We reverse the summary judgment and remand the cause to the trial court for further proceedings.