Opinion issued on April 4, 2002












 In The

Court of Appeals

For The

First District of Texas






NO. 01-00-01193-CV






MAXINE WILSON, GUARDIAN OF THE PERSON AND ESTATE OF
ANTHONY PAUL O'ROURKE, AN INCAPACITATED PERSON, Appellant


V.


ANDREW J. METZ AND LANA METZ, Appellee






On Appeal from the 333rd District Court of

Harris County, Texas

Trial Court Cause No. 99-45767A






O P I N I O N

 This is a premises liability case. Appellant, Maxine Wilson, guardian of the
person and estate of Anthony Paul O'Rourke, an incapacitated person, is appealing
a summary judgment rendered in favor of appellees, Andrew J. Metz and Lana Metz. 
We affirm.

Factual Background and Procedural History

 The undisputed evidence shows that on or about September 11, 1997, appellees
hired Quality Clearing Company (Quality) to cut down and remove pine trees from
their homestead located in Tomball, Texas. According to the parties' written
agreement, Quality would cut down the trees and haul them to a sawmill and pay
appellees $10.00 per ton for the timber hauled. Quality agreed to provide the labor
and materials for the job, but did not agree to be responsible for removing tree stumps
or any "hand labor."

 Tree cutting operations began on September 11, 1997 and continued for two
days. As Anthony Paul O'Rourke, a member of Quality's logging crew, was cutting
down a large pine tree on appellees' property, the tree struck Mr. O'Rourke, causing
him serious injuries. On the day of the accident, Nick Godkin, Jr., an employee of
Quality, was in charge of the tree cutting operations. 

 Mr. O'Rourke's guardian, Maxine Wilson, then sued appellees and Mr.
Godkin, seeking damages for O'Rourke's personal injuries. Appellees filed a motion
for summary judgment. The trial court granted the motion and signed an
interlocutory summary judgment in favor of appellees. The judgment became final
after the trial court severed appellant's claims against appellees from the claims
against Mr. Godkin and appellant filed this appeal.

Summary Judgment

 In issues three through eight, (1) appellant claims that, because the motion for
summary judgment "did not address all the issues [theories of recovery] raised" in
appellant's live pleadings, the trial court erred in granting more relief than requested
via a "Mother Hubbard Clause." Appellant further claims the summary judgment
evidence does not support a summary judgment as to all of appellant's theories of
recovery.

 We first address whether the judgment is final and appealable. In determining
the finality of a judgment for appellate purposes, the dispositive question is what the
order, taken as a whole, purports to do. Lehmann, 39 S.W.3d 191, 192 (Tex. 2001);
see also Hervey v. Flores, 975 S.W.2d 21, 25 (Tex. App.--El Paso 1998, pet. denied). 
The intent contained in the order, as manifested in its language, must embrace all
claims and all parties. Hervey, 975 S.W.2d at 25. In Lehmann, the Texas Supreme
Court held that a judgment is final for purposes of appeal "if and only if either it
actually disposes of all claims and parties then before the court, or it states with
unmistakable clarity that it is a final judgment." 39 S.W.3d at 192. The Court further
held that the "language that the plaintiff take nothing by [her] claims in the case . .
. shows finality if there are no other claims by other parties." Jacobs v. Satterwhite,
45 Tex. Sup. Ct. J. 217, 218 (December 13, 2001) (per curiam) (citing Lehmann, 39
S.W.3d at 205).

 In this premises liability case, appellant asserted the injury was caused by
negligent activity combined with joint enterprise, agency, and inherently dangerous
non-delegable duty.

 Appellees asserted as grounds for summary judgment that no joint enterprise
existed, and that appellees did not have, or exercise, control over appellant. 
Appellees sought dismissal of all causes of action asserted by appellant.

 The trial court's interlocutory summary judgment stated, in pertinent part:

 It is further ORDERED that this Court finds that there was
no Joint Enterprise by and between Nick Godkin, Jr. and/or
Quality Clearing and Defendants, ANDREW J. METZ
AND LANA METZ. 


 It is further ORDERED that there was neither any right to
control nor actual exercise of control by ANDREW J.
METZ and LANA METZ over the specific activity
resulting in the injury alleged to Plaintiff, ANTHONY
PAUL O'ROURKE;


 Having ruled on all of the above as indicated, it is this
Court's opinion that the Interlocutory Summary Judgment
is hereby GRANTED for ANDREW J. METZ AND LANA
METZ, that Plaintiff MAXINE WILSON, GUARDIAN OF
THE PERSON AND ESTATE OF ANTHONY PAUL
O'ROURKE, AN INCAPACITATED PERSON, take nothing
of and against ANDREW J. METZ and LANA METZ,
and that ANDREW J. METZ and LANA METZ go forth,
without day.

(Emphasis added.)

 In light of the language contained in the trial court's judgment as well as the
live pleadings, we hold that, once the severance order was signed, the judgment
became final and appealable. We now address whether the trial court erred in
granting summary judgment on the whole case.

Standard of Review

 The standard of review for traditional summary judgments is well established. (2) 
Summary judgment is proper only when the movant proves there is no genuine issue
as to any material fact, and it is entitled to judgment as a matter of law. Randall's
Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); Marchal v. Webb, 859
S.W.2d 408, 412 (Tex. App.--Houston [1st Dist.] 1993, writ denied). When
evaluating a summary judgment, we assume all the non-movant's evidence is true. 
Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). We indulge
every reasonable inference in favor of the non-movant. Id. We resolve all doubts
about the existence of a genuine issue of any material fact against the movant. 
Johnson Cty. Sheriff's Posse, Inc. v. Endsley, 926 S.W.2d 284, 285 (Tex. 1996). If
the movant shows it is entitled to judgment as a matter of law, the non-movant must
present evidence raising a fact issue to defeat a motion for summary judgment. See
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979);
Haight v. Savoy Apartments, 814 S.W.2d 849, 851 (Tex. App.--Houston [1st Dist.]
1991, writ denied).

Premises Liability

 In Texas, there are two types of premises liability for which appellees may be
responsible: (1) premises defect and (2) negligent activity. Clayton W. Williams, Jr.,
Inc. v. Olivo, 952 S.W.2d 523, 527 (Tex. 1997). Appellant alleged liability under the
negligent activity type.

 Negligent activity is asserted when the injuries are sustained by, or as a
contemporaneous result of, the activity itself. See generally Koch Refining Co. v.
Chapa, 11 S.W.3d 153, 156 n. 3 (Tex. 1999) (holding breach of duty by safety
employee constituted negligent activity cause of action); Redinger v. Living, Inc., 689
S.W.2d 415, 417 (Tex. 1985) (stating when plaintiff's finger was crushed while
moving dirt, it was negligent activity case, not premises defect case); Laurel v.
Herschap, 5 S.W.3d 799, 802 (Tex. App.--San Antonio 1999, no pet.) (holding that
injuries sustained by pipe which fell due to interruption in pulling of pipe out of well
is negligent activity case, not premises defect case).

 An owner or occupier of land does not have a duty to see that an independent
contractor performs work in a safe manner, unless the owner retains control over the
contractor's work. Coastal Marine Serv. v. Lawerence, 988 S.W.2d 223, 225 (Tex.
1999); Hoechst-Celanese Corp. v. Mendez, 967 S.W.2d 354, 356 (Tex. 1998);
Enserch Corp. v. Parker, 794 S.W.2d 2, 6 (Tex. 1990); Exxon Corp. v. Quinn, 726
S.W.2d 17, 19 (Tex. 1987); Redinger, 689 S.W.2d at 417-418; Bright v. Dow
Chemical Co., 1 S.W.3d 787, 789-790 (Tex. App.--Houston [1st Dist.] 1999, no
pet.). Where the work is conducted by, and under the control of, the independent
contractor and the dangerous activity arises out of the activity of the independent
contractor's staff, the duty to protect from hazards is not that of the owner of the
premises but that of the independent contractor. Lawerence, 988 S.W.2d at 225;
Hammack v. Conoco, Inc., 902 S.W.2d 127, 130 (Tex. App.--Houston [1st Dist.]
1995, writ denied) (citing Abalos v. Oil Development Co., 544 S.W.2d 627, 631 (Tex.
1967)).

 For example, in Abalos, the Texas Supreme Court held that the premises owner
had no duty to warn an independent contractor's employee of a dangerous situation
created by the employee while using machinery under the contractor's control. 544
S.W.2d at 631-32; see also Pence Construction Corp. v. Watson, 470 S.W.2d 637,
640-43 (Tex. 1971) (holding premises owner not liable to employee of independent
contractor injured after he fell through vent in roof because it was condition created
by work of independent contractor). 

 In Jenkins v. Fritzler Development Corp., this Court held that the premises
owner had no duty to warn an employee of a roofing sub-contractor of the danger of
falling from the roof because it was a condition created by and inherent to the
employee's roofing work. 580 S.W.2d 63, 64-65 (Tex. App.--Houston [1st Dist.]
1979, writ ref'd. n.r.e.); see also Richard v. Cornerstone Constructors, Inc., 921
S.W.2d 465 (Tex. App.--Houston [1st Dist.] 1996, writ denied) (holding premises
owner not liable to employee of independent contractor injured when he fell from
scaffold not meeting OSHA standards, when board was chosen, installed, and used
by independent crew). 

 Appellant contends that appellees were liable for the negligent activity type of
premises liability under the theories of joint enterprise, agency, and non-delegable
duty. 

 1. Joint Enterprise

 Under Texas law, a joint enterprise signifies a legal relationship between two
or more parties that imposes the responsibility upon each joint adventurer for the
negligent acts of the other while acting in furtherance of their common undertaking. 
See Triplex Communications, Inc. v. Riley, 900 S.W.2d 716, 718 (Tex. 1995);
Shoemaker v. Estate of Whistler, 513 S.W.2d 10, 14 (Tex. 1974). There are four basic
elements required to establish a joint enterprise: (1) an agreement among the members
of the group; (2) a common purpose; (3) a community of pecuniary interest; and (4)
an equal right to control the enterprise. Blount v. Bordens, Inc., 910 S.W.2d 931,
933 (Tex. 1995); see also Shoemaker, 513 S.W.2d at 16-17; Triplex, 900 S.W.2d at
718. Because we find it dispositive, we focus our analysis on whether the parties in
this case had an equal right to control the enterprise.

 In deciding whether the parties had an "equal right to control," we are guided
by the Texas Supreme Court's decision in Triplex, 900 S.W.2d at 717-19. In that
case, a radio station collaborated with a local night club to sponsor ladies night each
Thursday. Id. The station assigned a disc jockey to the night club for live-remote
broadcasts during the event and the disc jockey was responsible for making
announcements over the public-address system informing patrons at the club of drink
and other promotions that encouraged patrons to go to the bar. Id. 

 During one such event, the club served two patrons, one underage, 16 to 17
mixed drinks. Id. Both patrons were later involved in automobile accidents caused
by their intoxication. Id. Two police officers investigating the first accident were
struck by the car of the second patron and brought suit against the club and radio
station in part under a joint enterprise theory. Id. 

 In considering the joint enterprise question, the supreme court held that, even
assuming the above evidence was sufficient to satisfy the first three prongs of the test,
"there [was] no evidence of an equal right to direct and control the enterprise to
justify the imposition of joint enterprise liability." Id. at 719. The court held that,
while the radio station might make suggestions that the club could accept or reject,
it had no contractual right to control the distribution of alcohol. Id. According to the
Triplex court, it was the injury causing event-the service of alcohol-that was the
crucial matter over which the radio station needed to have a right of control in order
to be subject to joint enterprise liability. Id. Because there "was no evidence that (the
radio station) had a contractual right of control, or exercised any right of control over
who was served, admitted, or ejected" at the club, the court held that there was no
joint enterprise liability. Id. 

 Similarly, in this case, the undisputed summary judgment evidence establishes
that appellees did not exercise, or have the right to exercise, control over the conduct
that caused Mr. O'Rourke's injuries, i.e., cutting down the trees. According to the
parties' written agreement, Quality, not appellees, was responsible for providing the
"labor and materials" necessary for cutting down the pine trees and for hauling them
away. Appellees specifically stated in their affidavits that they did not have "any
right to exercise . . . control," nor did they "attempt to exercise control" over any of
the activities involved with the tree-cutting process. In fact, appellees were not
present while the trees were being cut down. They simply told Quality which trees
to cut down and left the means used to accomplish that result up to Quality's
discretion. This evidence is undisputed. 

 2. Agency

 Under the agency theory, the "right to control" test is typically applied. Farrell
v. Greater Houston Transp. Co., 908 S.W.2d 1, 3 (Tex. App.--Houston [1st Dist.]
1995, writ denied); Smith v. Foodmaker, Inc., 928 S.W.2d 683, 687 (Tex. App.--Fort
Worth 1996, no writ) (citing Newspapers, Inc. v. Love, 380 S.W.2d 582, 590-91 (Tex.
1964)). Under this test, the court examines whether the alleged principal has the right
to determine the details of the work. See Smith, 928 S.W.2d at 687. It is the extent
of the principal's control over the details of accomplishing the assigned task that
primarily distinguishes the status of independent contractor from that of agent. 
Pitchfork Land and Cattle Co. v. King, 346 S.W.2d 598, 602-03 (Tex. 1961); Lyons
v. Lindsay Morden Claims Management, Inc., 985 S.W.2d 86, 90 (Tex. App.--El
Paso 1998, no pet.); McDuff v. Chambers, 895 S.W.2d 492, 497 (Tex. App.--Waco 
1995, writ denied); Hoechst Celanese Corp. v. Compton, 899 S.W.2d 215, 220 (Tex.
App.--Houston [14th Dist.] 1994, writ denied).

 When no contract establishes the worker's status or the alleged employer's
right to control the work, the right to control is measured by:

 (1) the independent nature of the worker's business; (2)
the worker's obligation to furnish necessary tools,
supplies, and materials to perform the job; (3) the
worker's right to control the progress of the work except
as to final results; (4) the time for which the worker is
employed; and (5) the method of payment, whether by unit
of time or by the job


Pitchfork, 346 S.W.2d at 603; Hoechst, 899 S.W.2d at 220. The most fundamental
of these factors, however, is the right of control. See Ross v. Texas One Partnership,
796 S.W.2d 206, 210-11 (Tex. App.--Dallas 1990), writ denied per curiam, 806
S.W.2d 222 (Tex. 1991) (citing Pitchfork, 346 S.W.2d at 603 and Love, 380 S.W.2d
582, 590-91).

 The summary judgment evidence establishes that Quality and its employees
were independent contractors rather than agents. Appellees did not have the right to
control Quality and its employees, they were not responsible for furnishing any tools,
supplies, or materials, and Quality was only hired to perform this particular task. 



 3. Inherently Dangerous Non-Delegable Duty

 As a general rule, a party employing an independent contractor to do inherently
dangerous work may be liable to third parties for injuries arising out of the
performance of such work. Hammack, 902 S.W.2d at 131 (citing Gray v. Baker &
Taylor Drilling Co., 602 S.W.2d 64, 67 (Tex. App.--Amarillo 1980, writ ref'd n.r.e.). 
However, an employee of an independent contractor, such as Mr. O'Rourke, is not
a third party for the purposes of this rule as a matter of law. See id. Therefore, this
theory has no applicability to this case.

Conclusion

 Here, the summary judgment evidence shows that Mr. O'Rourke's injuries
arose out of an activity conducted in the course and scope of his employment with
Quality, i.e., cutting down pine trees. The trees were to be cut down and removed
without damaging the nearby house, garage, swimming pool, propane tank, and out
building. No contractual agreement assigning control rights existed between
appellees and Quality, and at no time were appellees directing work on the job site
when the accident occurred. Appellees did nothing more than promulgate general
directions regarding what work they wanted Quality to accomplish and left the details
of that process entirely up to Quality. Appellant's whole case depended on whether
appellees had control over the contractor's work. The summary judgment evidence
establishes that there was neither any right to control nor actual exercise of control
by appellees over the specific activity resulting in the involved injury. Accordingly,
the trial court did not err in granting summary judgment.

 We overrule appellant's issues three through eight.

 All pending motions are overruled.

 We affirm the trial court's judgment.





 Margaret Garner Mirabal

 Justice


Panel consists of Justices Mirabal, Hedges, and Jennings.

Do not publish. Tex. R. App. P. 47.4.
1. Appellant's first two issues are moot. They address appellees' motion to 
dismiss the appeal, which has been withdrawn. 
2. When evidence supporting a motion for summary judgment is filed by the
movant, we may review a purported "no evidence" motion for summary
judgment under the standard of review for traditional summary judgments. 
Torres v. City of Waco, 51 S.W.3d 814, 822 (Tex. App.--Waco 2001, pet.
denied).