In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-03-00110-CV


______________________________




MICHAEL A. PRICE AND RAN-MIK, INC., Appellants



V.



CHARLES L. WILSON AND WIFE, TERESA GAIL WILSON,


AND TERESA'S INVESTMENTS, INC., Appellees




 


On Appeal from the 76th Judicial District Court


Titus County, Texas


Trial Court No. 29,387




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Ross



MEMORANDUM OPINION



 Michael A. Price and Ran-Mik Inc., appellants, have filed a motion to dismiss their
appeal. Pursuant to Tex. R. App. P. 42.1, the motion is granted.

 We dismiss the appeal.


 Donald R. Ross

 Justice


Date Submitted: September 29, 2003

Date Decided: September 30, 2003



ision to grant summary judgment. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994);
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 

 With a traditional motion for summary judgment, the movant bears the burden of establishing
that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
Tex. R. Civ. P. 166a(c); Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). 
A defendant moving for summary judgment must negate at least one essential element of each of the
plaintiff's theories of recovery, Gibbs v. Gen. Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970), or
plead and conclusively establish each element of an affirmative defense. City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). If the moving party does not meet its burden
of proof, the nonmovant has no burden and the summary judgment motion must fail. See id. If the
moving party produces summary judgment evidence entitling it to summary judgment, the burden
shifts to the nonmovant to present evidence that raises a material fact issue. Phan Son Van v. Pena,
990 S.W.2d 751, 752 (Tex. 1999); Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996). In deciding
whether there is a disputed material fact issue precluding summary judgment, summary judgment
evidence favorable to the nonmovant will be taken as true, every reasonable inference must be
indulged in favor of the nonmovant, and any doubts resolved in the nonmovant's favor. Nixon, 690
S.W.2d at 548-49. 

 Khan sued Shell on theories of negligence and gross negligence. Common law negligence
consists of three elements: 1) a legal duty owed by one person to another; 2) a breach of that duty;
and 3) damages proximately resulting from the breach. Greater Houston Transp. Co. v. Phillips, 801
S.W.2d 523, 525 (Tex. 1990); Rosas v. Buddies Food Store, 518 S.W.2d 534, 536 (Tex. 1975). 
Shell moved for summary judgment on the ground that it owed no duty to Khan. Khan alleged that
Shell failed to provide him a safe place to work. The proper inquiry concerning duty in a case
alleging negligence in maintaining a safe workplace focuses on who had specific control over the
safety and security of the premises. See Exxon v. Tidwell, 867 S.W.2d 19, 23 (Tex. 1993). In
particular, the focus should be on who had the right to control the alleged security defects leading
to the plaintiff's injuries. See id. Thus, whether Shell had a duty to provide a safe workplace for
Khan turns on whether the company actually controlled or had a right to control those security-related matters that conceivably contributed to Khan's injuries. See id. (1) 

 Shell owns the service station at which Khan was employed and injured. Shell leases the
station to LA Sani, Inc., a company owned by Saleem R. Syed. Syed also acts as the manager of the
station. Khan suffered an injury during an armed robbery at the service station one morning at
approximately 4:00 a.m. According to Khan's affidavit, he was outside the station cleaning the
service bays and emptying a trash can when a man emerged from a dark side of the building wearing
a bandanna over his face and carrying a rifle. On seeing the man, Khan turned and ran toward the
station. He was shot while trying to lock the door behind him. 

 The business relationship between Shell and Syed (through his company) is governed
primarily by two documents, the lease and the dealer agreement. Shell argues that nothing in these
two documents gave it a right of control over the safety and security of the gas station, that all such
control was in the hands of Syed, and thus it owed no duty to Khan. Shell points out that the lease
agreement required Syed to personally and actively manage the business to assure compliance with
all provisions of the lease. The lease also required him to satisfy all regulatory requirements, and
he was prohibited from maintaining or permitting any condition at the station that might endanger
the health, safety, or well-being of anyone present at the station. In a paragraph entitled "Dealer's
Independence," the dealer agreement reads: 

 Dealer is an independent businessperson, and nothing in this Agreement shall
be construed as reserving to Shell any right to exercise any control over, or to direct
in any respect the conduct or management of, Dealer's business or operations
conducted pursuant to this Agreement; but the entire control and direction of such
business and operations shall be and remain in Dealer, subject only to Dealer's
performance of the obligations of this Agreement. 

Although Shell cites this paragraph as support for its position, Khan focuses on the words, "subject
only to Dealer's performance of the obligations of this Agreement," and argues that this is the
exception that "swallows the rule." According to Khan, Syed managed the service station in general,
but Shell reserved the right to control some security measures because Syed was obligated by the
lease and dealer agreements to obtain Shell's express permission before undertaking many actions
directly affecting the elements of security relevant here. Shell, in effect, had veto power over many
of Syed's security-related decisions. Khan further argues that although Syed had to obtain Shell's
prior permission before undertaking many security-related decisions, Shell had the right to enter the
premises and make such security-related changes on its own initiative.

 We agree with Shell that the contracts establish, in general, that the day-to-day operations
are the responsibility of Syed. Nevertheless, who controls general operating procedures is not the
relevant inquiry. See Exxon v. Tidwell, 567 S.W.2d at 19. We must determine who had a right to
control those security-related matters that conceivably contributed to Khan's injuries. The terms of
the contracts, even as understood by Shell as reflected in the testimony of its representative, support
Khan's position. 

 Shell's representative, Brooks Herring, testified that if Syed wanted to put up new lights for
greater illumination, install bullet-proof glass, or even put up a sign announcing minimal cash on
hand, he would be required by the contracts to obtain Shell's permission. Similarly, if Syed wanted
to install a security camera, he would need Shell's permission. Although Syed had to request
permission of Shell to make certain changes related to security, Shell had the power and the right to
step in at any time and make security-related changes itself, such as adding bullet-proof glass, extra
lighting fixtures, or outside fencing. Herring testified that safety and the prevention of crime were
relevant considerations when designing new service stations. Yet, as stated in the contracts and
understood by Herring, Syed could not remodel or alter the premises, even if directly related to
security, without Shell's permission. Syed, in fact, did submit a preliminary remodeling proposal to
Shell suggesting, among other things, the addition of proper exterior lighting for the express purpose
of making customers feel safer. The remodeling was not authorized, even though Syed did not
request that Shell finance it. 

 The strongest case on which Shell relies for support, Smith v. Foodmaker, Inc., 928 S.W.2d
683 (Tex. App.-Fort Worth 1996, no writ), is distinguishable. In that case, the appeals court
concluded that the franchisor did not retain any control over the safety and security of the premises
because it was not aware of any crime, violence, or security problems at the site; it did not require
the franchisee to report security problems; it did not direct, control, or advise the franchisee in terms
of security; it did not make any decisions regarding the hiring of guards or installation of security
cameras; and it did not require the franchisee to seek its prior approval to maintain or repair lighting,
doors, or locks. Id. at 686-87. 

 We note that knowledge of past criminal activity at the site is not relevant to the issue of who
had control over security matters at the time of the crime giving rise to the cause of action. The
second factor noted by the court in the Smith case, the duty to report security problems, existed in
our case by the express terms of the contracts. As to directing, controlling, or advising a franchisee
on security, Shell undertook to train its dealers on topics including security and required such
training of them. Shell could even require a franchisee to provide additional staff at a service station,
possibly even a security guard. And, although the contracts imposed on Syed the duty to keep the
premises illuminated, Shell had the right to install exterior lighting or security cameras, which Syed
could not do without Shell's prior permission.

 Shell clearly had the right to exercise control over some security-related matters. It is 
reasonable to infer from this fact that these matters may have been causally related to the robbery
in which Khan was shot. Therefore, there is some evidence of facts that may have imposed a duty
on Shell. Thus the summary judgment was improper. 

 We reverse the summary judgment and remand the cause to the trial court for further
proceedings.

 

 William J. Cornelius

 Chief Justice


Date Submitted: February 28, 2002

Date Decided: March 19, 2002


Publish
1. We distinguish here between a right of control and the exercise of control. A showing of
actual control is not necessary except where the right of control is not otherwise manifested. Exxon
v. Tidwell, 867 S.W.2d 19, 21-22 n.3 (Tex. 1993).