**Mitchell INGALLS, Appellant,**

v.

**STANDARD GYPSUM, L.L.C., Standard Gypsum Corporation, McQueeney Gypsum Company and Temple–Inland Forest Products Corporation, Appellees.**

No. 04–01–00003–CV.

Court of Appeals of Texas, San Antonio.

Dec. 26, 2001.

Rehearing Overruled Dec. 26, 2001.

Earl Landers Vickery, Law Office of Lanny Vickery, Michael Sean Quinn, Sheinfeld, Maley & Kay, P.C., Austin, for Appellant.

John W. Weber, Jr., W. Wendell Hall, Rosemarie Kanusky, Fulbright & Jaworski, L.L.P., San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, KAREN ANGELINI, Justice.

## ON APPELLANT'S MOTION FOR REHEARING AS TO APPELLEE TEMPLE FOREST AND APPELLEE'S UNOPPOSED MOTION TO CLARIFY JUDGMENT

KAREN ANGELINI, Justice.

We deny the motion for rehearing filed by Mitchell Ingalls and grant the motion to clarify the judgment filed by Standard Gypsum L.L.C. ("Standard Gypsum"), Standard Gypsum Corporation ("the corporation"), McQueeney Gypsum Company ("McQueeney"), and Temple–Inland Forest Products Corporation ("Temple–Inland"). We withdraw our opinion and judgment issued on November 21, 2001 and substitute the following in its place.

This is an appeal from a summary judgment entered in favor of Standard Gypsum L.L.C., Standard Gypsum Corporation, McQueeney, and Temple–Inland. We affirm the judgment in part and reverse and remand in part.

### BACKGROUND

Temple–Inland and McQueeney formed the limited liability company, Standard Gypsum, in accordance with the Texas Limited Liability Company Act. TEX.REV. CIV. STAT. ANN. art. 1528n (Vernon Supp. 2001). Thus, Temple–Inland and McQueeney are the two members of Standard Gypsum, as defined by the Texas Limited Liability Company Act. Additionally, Temple–Inland and Standard Gypsum entered into a written management agreement ("Agreement") in which Temple–Inland agreed to "manage and operate [Standard Gypsum's plant in McQueeney, Texas] in a manner which is consistent with [Temple–Inland's] management and operation of its own gypsum wallboard manufacturing facilities." Temple–Inland also agreed to procure and maintain, at Standard Gypsum's expense, adequate workers' compensation insurance covering all plant employees.

On February 2, 1997, Mitchell Ingalls was injured in the course and scope of his employment while working at Standard Gypsum's plant. Ingalls' arm caught in a machine at the plant, requiring amputation of his arm. Ingalls filed suit against McQueeney and Temple–Inland, alleging that they were negligent for failing to provide a guard around the machine and for failing to place the emergency button closer to the machine.

McQueeney and Temple–Inland moved for summary judgment. They both argued that because they are members of Standard Gypsum, they are also "employers" under the Texas Workers' Compensa-

tion Act and thus, immune from suit pursuant to the exclusive-remedy provision. As an alternative theory, Temple–Inland argued that, along with Standard Gypsum, it is Ingalls' "co-employer," because it had the right to control him at the time of the accident in accordance with the written Agreement.[1] The trial court granted summary judgment in favor of both Temple–Inland and McQueeney.

### STANDARD OF REVIEW

■ We review a summary judgment de novo. *Sasser v. Dantex Oil & Gas, Inc.*, 906 S.W.2d 599, 602 (Tex.App.-San Antonio 1995, writ denied). We will uphold a summary judgment only if the record establishes that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law on a ground set forth in the motion. *See* TEX.R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). If a defendant moves for summary judgment, it must disprove at least one of the elements of the plaintiff's cause of action, or, alternatively, prove each element of an affirmative defense. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). In determining whether there is a disputed issue of material fact precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon*, 690 S.W.2d at 548–49. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.*

### EXCLUSIVE-REMEDY PROVISION OF THE TEXAS WORKERS' COMPENSATION ACT

■ Under the Texas Workers' Compensation Act, "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the *employer or an agent or employee of the employer* for the death of or a work-related injury sustained by the employee." TEX. LABOR CODE ANN. § 408.001(a) (Vernon 1996) (emphasis added). The Texas Workers' Compensation Act defines an employer as "a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage."[2] *Id.* § 401.011(18) (Vernon Supp.2001). While an employee cannot sue his employer, he can sue a "third party" for damages incurred as a result of "an injury or death that is compensable under this subtitle." *Id.* § 417.001 (Vernon Supp.2001). Ingalls argues that McQueeney and Temple–Inland are third parties under the Texas Workers' Compensation Act. McQueeney and Temple–Inland argue that they should be considered employers.

### A. Dual Employment

■ Temple–Inland argues that it is a "co-employer," along with Standard Gypsum, under the Texas Workers' Compensation Act, because it had the right to control the details of Ingalls' work. Under the "joint" or "co-" employment doctrine, a

1. McQueeney did not urge the "co-employer" theory.

2. There was no summary judgment evidence before the trial court to prove that Standard Gypsum carried workers' compensation insurance at the time of the accident. However, the defendants state in their brief that "[a]t the time of Ingalls' injury, Standard Gypsum L.L.C. paid [Ingalls'] salary and provided workers' compensation insurance." Ingalls has not contradicted this assertion of fact; thus, we will accept it as true. *See* TEX.R.APP. P. 38.1(f) ("In a civil case, the court will accept as true the facts stated unless another party contradicts them.").

"person may be the servant of two employers at one time as to one act if the service to one does not involve an abandonment of the service to the other." *Ely v. Gen. Motors Corp.*, 927 S.W.2d 774, 777 (Tex. App.-Texarkana 1996, writ denied) (citing RESTATEMENT (SECOND) OF AGENCY § 226 (1958)); *White v. Liberty Eylau Indep. Sch. Dist.*, 920 S.W.2d 809, 813 (Tex.App.-Texarkana 1996, writ denied); *see also Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d 835, 843 (Tex.App.-Houston [14th Dist.] 1996, writ denied). The Texas Supreme Court has implicitly acknowledged the joint employment doctrine in the context of workers' compensation. *See Insurors Indem. & Ins. Co. v. Pridgen*, 148 Tex. 219, 223 S.W.2d 217, 217–19 (1949) (suggesting possibility of co-employer relationship). The First Court of Appeals has done likewise. *See Gen. Accident Fire & Life Assurance Corp. v. Callaway*, 429 S.W.2d 548, 549–51 (Tex.App.-Houston [1st Dist.] 1968, no writ) (upholding jury finding that plaintiff was injured in course and scope of joint employment for two companies). And, the Fourteenth Court of Appeals has expressly recognized the joint employment doctrine in the context of workers' compensation. *Brown*, 921 S.W.2d at 843–44.

Temple–Inland attached the written Agreement to its motion for summary judgment as proof of its position that it had the right to control the details of Ingalls' work. The written agreement states that Temple–Inland agrees to

> [h]ire, train, promote, discharge, and supervise the work of all employees necessary for the operation of the Business, and provide such employees with human resources support and employee development services. Such employees may be on [Standard Gypsum's] payroll or [Temple–Inland's] payroll, but [Temple–Inland] shall not be liable to [Standard Gypsum] or others for any act or omission on the part of such employees unless the [Temple–Inland] has failed to use reasonable diligence in their hiring, discharge, or supervision, except that the General Manager of the Business shall be on [Temple–Inland's] payroll and, at [Temple–Inland's] expense, [Temple–Inland] shall pay for such General Manager's salary and benefits. [Temple–Inland] shall not at any time enter into any agreement with any employee for a period in excess of one year or for compensation in excess of $60,000 per year without [Standard Gypsum's] consent. [Temple–Inland] shall procure and maintain (at [Standard Gypsum's] expense) adequate workmen's compensation insurance covering all of the employees.

Additionally, Temple–Inland agrees to

> [a]rrange at [Standard Gypsum's] expense for compliance with all statutes, ordinances, laws, rules, regulations, orders, and determinations affecting or issued in connection with the Business by any governmental authority having jurisdiction thereof. [Temple–Inland] shall not, without [Standard Gypsum's] consent, make any alterations or repairs so ordered or so required, if not included in the Annual Plan, but if any such alterations or repairs are not made because of [Standard Gypsum's] failure to give its written consent after request therefor, then [Standard Gypsum] shall hold [Temple–Inland] harmless from any liability that may arise by reason of the failure to make such alterations or repairs. Notwithstanding the foregoing, in case of an emergency or if failure promptly to comply with an order or to cure any violation shall expose [Standard Gypsum] or [Temple–Inland] to the imminent danger of criminal liability, then in such event [Temple–Inland] shall cause such order or violation to be com-

plied with or cured without awaiting [Standard Gypsum's] consent. Unless otherwise directed by [Standard Gypsum], [Temple–Inland] shall, at [Standard Gypsum's] expense, protest or litigate to final decision in any appropriate court or forum any violation, order, rule, or regulation affecting the Business.

■ In his response to the summary judgment motion, Ingalls submitted two affidavits: one signed by himself and one signed by Ron Trombley, his supervisor. Temple–Inland filed a motion to strike both affidavits, arguing that they were based on nothing more than personal belief and hearsay. The trial court agreed and struck both affidavits. Indeed, most of the testimony in the affidavits is based on personal belief and hearsay. For example, Ingalls' affidavit states that he "began to hear that the gypsum plant was being bought by Temple–Inland or some business venture," that he "was generally aware that all the guys [he] worked with worked for 'Standard Gypsum,' " that he "became generally aware that there were some guys who worked for 'Temple–Inland' who had some involvement with the running of the plant," that the "guys with whom [he] had contact in the course and scope of [his] employment were all 'Standard Gypsum' guys to the best of [his] knowledge," and that "[t]o the best of [his] knowledge, [he] never had any contact or dealings with anyone from 'Temple–Inland' while [he] worked at Standard Gypsum plant." Likewise, Trombley's affidavit states that "[t]o the best of [his] knowledge, all people in [his] reporting chain, as well as all of the people [he and Ingalls] worked with at the plant, were 'Standard Gypsum' people rather than 'Temple–Inland' people," that he "was not aware of any supervision of [his and Ingalls'] work by anyone from Temple–Inland," and that "[n]o one else had authority to instruct [Ingalls] concerning theses details and, to

the best of [his] knowledge, no one did." These types of statements prefaced with the phrases "generally aware" and "to the best of my knowledge" do not meet the personal knowledge requirement of Texas Rule of Civil Procedure 166a(f). *See Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex.1996) ("Such language does not positively and unqualifiedly represent that the 'facts' disclosed are true."). However, the affidavits do contain some statements that are based on the affiants' personal knowledge. In his affidavit, Ingalls states that his checks were paid from Standard Gypsum's bank account, that his immediate supervisor was Trombley, and that Trombley was the only person who instructed him on how to perform his duties. Trombley states in his affidavit that he was an employee of Standard Gypsum and that he was Ingalls' supervisor.

In response to the affidavits produced by Ingalls, Temple–Inland filed an additional affidavit by Dix Brown, the production manager for Standard Gypsum at the time of the incident. Brown declares in his affidavit that Trombley did not have access to the terms of the written Agreement, nor to the internal workings of payroll information. Further, he states that Joe Brown, who was paid by Temple–Inland, was the General Manager of the plant at the time of Ingalls' accident.

■ The admissible summary judgment evidence submitted by the parties is consistent. For example, everyone agrees that Ingalls' supervisor was Trombley, a Standard Gypsum employee. The fact that Trombley was Ingalls' supervisor does not create a fact issue regarding Temple–Inland's right to control Ingalls pursuant to the written Agreement. Generally, the right of control and direction is a question of contract between the general employer and special employer. *Producers Chem.*

*Co. v. McKay*, 366 S.W.2d 220, 225 (Tex. 1963); *Alice Leasing Corp. v. Castillo*, 53 S.W.3d 433, 440 (Tex.App.-San Antonio 2001, pet. denied). The written Agreement clearly gave Temple–Inland the authority to control Standard Gypsum's employees. Ingalls argues that because the written Agreement specifies that Temple–Inland "shall not be liable to [Standard Gypsum] or others for any act or omission on the part of such employees unless [Temple–Inland] has failed to use reasonable diligence in their hiring, discharge, or supervision," Temple–Inland cannot be considered his employer. Based on this language, Ingalls argues that Temple–Inland is not liable under respondeat superior to third parties for Ingalls' acts and as such, cannot be considered his employer. A third party, however, could indeed maintain a cause of action against Temple–Inland under the theory of respondeat superior for Ingalls' acts. A contract between Temple–Inland and Standard Gypsum would not absolve Temple–Inland of liability to a third party, as the third party would not be bound by the contract. Thus, we interpret the provision to be an indemnification clause between Temple–Inland and Standard Gypsum, not a provision that would absolve Temple–Inland of tort liability to third parties.

The summary judgment evidence shows that at the time of the incident, Ingalls was serving two masters, Temple–Inland and Standard Gypsum, and that his service to one "did not involve abandonment of the service to the other." RESTATEMENT (SECOND) OF AGENCY § 226 (1958). The non-hearsay portions of the affidavits submitted by Ingalls do not create a fact issue regarding the relationship between Standard Gypsum, Temple–Inland, and plant employees. As Temple–Inland and Standard Gypsum were Ingalls' co-employers, the trial court did not err in granting summary judgment in favor of Temple–Inland.

## B.  Members of Limited Liability Companies

McQueeney and Temple–Inland [3] argue that, as members of a limited liability company, they should be considered "employers" of Standard Gypsum's employees for purposes of workers' compensation. This is an issue of first impression. However, there are three cases which provide guidance: *Lawler v. Dallas–Statler–Hilton Joint Venture*, 793 S.W.2d 27 (Tex.App.-Dallas 1990, writ denied), *Sims v. Western Waste Indus.*, 918 S.W.2d 682 (Tex.App.-Beaumont 1996, writ denied), and *Alice Leasing Corp. v. Castillo*, 53 S.W.3d 433 (Tex.App.-San Antonio 2001, pet. denied).

### 1.  *Lawler* and *Alice Leasing*:  Joint Ventures and Partnerships

McQueeney and Temple–Inland rely substantially on *Lawler*. In *Lawler*, the plaintiff, a maid supervisor, was injured while working at the Dallas Hilton Hotel, for which she collected workers' compensation benefits. 793 S.W.2d at 28. The Dallas Hilton Hotel was owned by Dallas Statler Hilton Joint Venture. *Id.* The joint venture, in turn, was owned by Hilton Hotel Corp. and Prudential Insurance Co. *Id.* Under a lease and management agreement, the Hilton Hotel Corp. managed the hotel on behalf of the joint venture. *Id.* The plaintiff sued Hilton Hotel Corp., Prudential Insurance Co., and the joint venture for negligence. *Id.* All three claimed that they were immune from liability under the Texas Workers' Compensation Act as the plaintiff's "employers." The Fifth

---

**3.** Temple–Inland advances this argument as an alternate ground for affirmance. However, as we have affirmed the judgment as to Temple–Inland on the co-employer issue, our resolution of this issue only affects the summary judgment as to McQueeney.

Court of Appeals likened a joint venture to a partnership and noted that where a partnership is an employer, the individual partner is also an employer and not an employee as contemplated by the Texas Workers' Compensation Act. *Id.* at 31. The court also noted that some states had applied the aggregate theory to partnerships, reasoning that the partnership is an association of persons who are viewed as co-owners. *Id.* at 34. Other states have adopted an entity theory, concluding that a partnership is an entity in itself rather than an aggregate of its members. *Id.* The distinction between the two theories is that under the aggregate theory, a plaintiff is barred from bringing an action against a partner where the partnership is the employer. *Id.* at 33. In contrast, under the entity theory, "the employee of a partnership is not an employee of an individual partner and can recover against such partner, as a third party, for negligent injury incident to employment." *Id.* (citation omitted). While the court observed that Texas appears to be predominantly an entity theory state, "there are still aggregate features" to the Uniform Partnership Act. *See id.* at 34 (noting that for example, the partnership act provides for joint and several liability). Thus, the court concluded,

> the better rule in cases involving claims by employees against employers is the majority rule that the individual partners or joint venturers are also employers of the partnership's or joint venturer's employees. Although in most other areas Texas is predominantly an entity theory state, it is not inconsistent with the [Uniform Partnership Act] or case law to apply the aggregate theory to the employment relationship.

*Id.* Furthermore, the court emphasized that its holding was consistent with the theory and practice of workers' compensation law. *Id.*

With the enactment of the Workers' Compensation Act, the Texas legislature made workers' compensation the exclusive remedy which an employee has against his subscribing employer unless other remedies are expressly provided for.... In consideration of the same legislative intent, we conclude that a partner or joint venturer is also an employer of the partnership's or joint venture's employees.... We refuse to thwart the clear legislative intent of the workers' compensation exclusive remedy provision by arbitrarily favoring the entity theory of partnership in this instance. For the above reasons, we hold that an individual partner or an individual member of a joint venture is an employer of the partnership's or joint venture's employees for purposes of the Texas workers' compensation law.

*Id.* (citations omitted).

Recently, however, we noted in *Alice Leasing Corp. v. Castillo*, that *Lawler* had been overruled by statute. 53 S.W.3d 433, 443 (Tex.App.-San Antonio 2001, pet. denied). We emphasized that since *Lawler* issued, the Legislature unequivocally embraced the entity theory of partnership law in 1993. *Id.* The Texas Revised Partnership Act defines a partnership as "an entity distinct from its partners." *Id.* Thus, we concluded that *Lawler* had been overruled by statute and "cannot support Alice Leasing's position that the aggregate theory should be applied here." *Id.* Therefore, even if we were to conclude that a limited liability company is comparable to a partnership or joint venture, Temple–Inland and McQueeney cannot rely on *Lawler*.

2. *Sims:* Parent Corporations and Their Subsidiaries

In *Sims v. Western Waste Industries*, the plaintiff was an employee of Western Waste Industries of Texas ("WWIT"),

working as a "bumper" on a garbage truck, when he injured his leg. 918 S.W.2d 682, 683 (Tex.App.-Beaumont 1996, writ denied). He sued Western Waste Indus., Inc. ("WWI"), the parent corporation of his employer. *Id.* WWI was allegedly involved in the design, manufacture, and marketing of the truck involved in the plaintiff's accident. *Id.* WWI argued that it was the "alter ego" of WWIT, the "real" employer of the plaintiff, and was entitled to assert immunity under the Texas Workers' Compensation Act. *Id.* The Ninth Court of Appeals did not agree. It noted that parent and subsidiary corporations are separate and distinct legal entities. *Id.* at 684. If they were considered to be the same entity, "would an employee be an employee of all subsidiaries and parents and would everyone under the corporate 'umbrella' be immune from suit as a third party under [w]orkers' [c]ompensation?" *Id.* at 686. Nothing in the Texas Workers' Compensation Act indicates that this was the intent of the legislature. *Id.*

> Partners in a partnership and members of a joint venture are held responsible by law for the acts and omissions of the partnership or joint venture. The benefit of immunity being "all for one and one for all" is accompanied by the obligation of liability being the same. However, parent and subsidiary corporations, absent exceptional circumstances and when it is in the interest of equity to do so, are not held accountable for the acts of the other; this is a primary motivation for incorporation. We are not persuaded that the legislature ever intended parent corporations, who deliberately chose to establish a subsidiary corporation, to be allowed to assert immunity under the Texas Workers' Compensation Act by reverse piercing of the corporate veil they themselves established. WWI has accepted the benefits of establishing a subsidiary corporation

in Texas and will not be allowed to disregard that entity now that it is their gain to do so. We hold that Texas law does not permit a parent corporation to assert the alter ego theory of piercing the corporate veil of their subsidiary and thereby assert [w]orkers' [c]ompensation immunity as a defense to suit by the subsidiary's employee.

*Id.* Ingalls relies heavily on *Sims,* arguing that the limited liability shield provided to members of an LLC is the key consideration for treating members of an LLC the same as parents of a corporation with regard to the exclusive-remedy provision. We agree.

Like the Texas Business Corporation Act, the Texas Limited Liability Company Act shields its members from liability. Article 4.03 of the Texas Limited Liability Company Act provides that "[e]xcept as and to the extent the regulations specifically provide otherwise, a member or manager is not liable for the debts, obligations or liabilities of a limited liability company including under a judgment decree, or order of a court." TEX.REV.CIV. STAT. ANN. art. 1528n, § 4.03 (Vernon Supp.2001). Moreover, "[a] member of a limited liability company is not a proper party to proceedings by or against a limited liability company, except where the object is to enforce a member's right against or liability to the limited liability company." *Id.* § 4.03(C).

■ In *Sims,* the court of appeals emphasized that the parent corporation could not argue that it was not liable for the actions of its subsidiary and then argue that it was the same entity for purposes of workers' compensation. 918 S.W.2d at 686. McQueeney and Temple–Inland are likewise arguing that while they benefit from limited liability under the Texas Limited Liability Company Act, they should be

considered "employers" for purposes of workers' compensation. The key distinction in this case, however, is that the parent corporation in *Sims* was being sued for products liability, i.e. an independent tort. The parent corporation was not being sued solely because it was the owner of the subsidiary. Implicit in the *Sims* opinion is the requirement that the parent of the corporation commit some independent tort separate and apart from the employment relationship. Even Ingalls has conceded that a passive shareholder of a corporation should not be considered a "third party" under the Texas Workers' Compensation Act solely on the basis of being an "owner" of the corporation. As the trial court granted summary judgment solely on the basis of McQueeney being a member of an LLC without considering whether it had allegedly committed an independent tort, we reverse the trial court's judgment with respect to McQueeney and remand for further proceedings consistent with this opinion.

### STANDARD GYPSUM L.L.C. AND STANDARD GYPSUM CORPORATION

Ingalls filed a general notice of appeal, stating only that he desires to appeal the judgment of the trial court. Ingalls' notice of appeal does not specify whether he is appealing the judgment as to all parties or only certain parties. In his brief, however, Ingalls does not contest the summary judgment with respect to Standard Gypsum L.L.C. and Standard Gypsum Corporation. Therefore, we affirm the judgment of the trial court with respect to these parties.

### CONCLUSION

In conclusion, we affirm the judgment of the trial court with respect to Temple–Inland, Standard Gypsum, L.L.C., and Standard Gypsum Corporation. With respect to McQueeney, we reverse and remand to the trial court for further proceedings consistent with this opinion.