**Bryon FITZ, Appellant,**

v.

**DAYS INNS WORLDWIDE, INC.,**
**f/k/a Days Inns of America,**
**Inc., Appellee.**

No. 04–02–00487–CV.

Court of Appeals of Texas,
San Antonio.

May 26, 2004.

Rehearing Overruled July 20, 2004.

Darby Riley, Law Office of Darby Riley, San Antonio, for appellant.

Robert B. Gilbreath, Deborah S. Coldwell, Jenkens & Gilchrist, P.C., Dallas, Mark R. Stein, Allen, Stein & Durbin, P.C., Mark R. Strandmo, Ricardo R. Reyna, Brock & Person, P.C., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, KAREN ANGELINI, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

Opinion by PHYLIS J. SPEEDLIN, Justice.

The motion for rehearing filed by appellant, Bryon Fitz ("Fitz"), is denied. This court's opinion and judgment dated October 1, 2003, are withdrawn, and this opinion and judgment are substituted. We substitute this opinion to consider evidence contained in a supplemental clerk's record that was properly before the trial court.

Fitz appeals the summary judgment granted in favor of Days Inns Worldwide, Inc. ("DIW"). We affirm the judgment of the trial court. In addition, we deny DIW's motion to dismiss this appeal for want of jurisdiction.

### BACKGROUND

This case arises out of a hit and run accident that occurred when Fitz was injured by a tractor-trailer while walking on a sidewalk. At the time, the driver of the tractor-trailer, Robert Dollard ("Dollard"), was turning into the parking lot of the Days Inn Hotel Southeast. Although Fitz survived, he suffered multiple injuries, including the amputation of his right leg. The tractor-trailer was owned by Pacific Motor Trucking Co. ("Pacific Motor Transport"). Fitz asserted a negligence claim against Dollard and Pacific Motor Transport. Fitz further asserted a negligence

claim against San Antonio Hospitality Investments, Inc. ("SAHI"), the hotel franchisee that owned and operated the Days Inn where the accident occurred, and DIW, the hotel franchisor.

DIW moved for summary judgment on the basis that there was no principal-agent relationship between DIW and SAHI that would subject DIW to liability because it did not own, supervise, maintain, or control the facility or the driveway complained of by Fitz. In his response to DIW's summary judgment motion, Fitz contended that DIW had contractual and actual control of the driveway because it could control the activities of its hotel franchisee and enforce compliance with its Standards of Operation and Design Manual (System Standards Manual), and therefore, the safety of the hotel's driveway. Fitz further responded that DIW was negligent in exercising its right to control SAHI's manner of maintenance and use of the driveways. On June 19, 2002, the trial court granted DIW's motion for summary judgment and severed the case against DIW. Fitz timely appealed the trial court's granting of summary judgment in favor of DIW.

Subsequently, Fitz settled with Dollard and Pacific Motor Transport for $2.75 million. Fitz's claims against SAHI went to trial, and the jury returned a verdict awarding Fitz $1,957,610 in damages. The jury found SAHI and Fitz each ten percent negligent, and Dollard and Pacific Motor Transport eighty percent negligent. Because SAHI had elected a dollar-for-dollar credit for the $2.75 million settlement, the trial court entered a take-nothing judgment in favor of SAHI.

## COLLATERAL ESTOPPEL

After this appeal was filed, DIW filed a Motion to Dismiss Appeal for Want of Jurisdiction on the basis that Fitz's claims were rendered moot by the subsequent settlement and jury trial against its previous co-defendants. Specifically, DIW contends that the jury verdict and judgment makes this appeal moot based on the doctrine of collateral estoppel. In essence, DIW maintains Fitz's damages have now been established by a jury. Consequently, he is precluded from relitigating his damages, and DIW is entitled to a settlement credit in an amount exceeding Fitz's damages. Therefore, Fitz's claims in this appeal are moot. DIW asks us to either dismiss the appeal for want of jurisdiction, or, in the alternative, stay the appeal pending the outcome of the appeal in the jury trial.

Collateral estoppel precludes a party from relitigating an issue when (1) it was fully litigated in the first action, (2) it was essential to the judgment in the first action, and (3) the parties were cast as adversaries in the first action. *Mower v. Boyer*, 811 S.W.2d 560, 563 (Tex.1991); *Parker v. State Farm Mut. Auto. Ins. Co.*, 83 S.W.3d 179, 182 (Tex.App.-San Antonio 2002, no pet.). "As an affirmative defense, collateral estoppel must be pleaded at the trial court level or it is waived." *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 802 (Tex.1994); *Domel v. City of Georgetown*, 6 S.W.3d 349, 353 (Tex.App.-Austin 1999, pet. denied). Accordingly, collateral estoppel may not be raised for the first time on appeal. *Domel*, 6 S.W.3d at 353. DIW cites several federal cases that have allowed a party to assert collateral estoppel for the first time on appeal; however, these cases are not binding authority on this court. *See Serna v. H.E. Butt Grocery Co.*, 21 S.W.3d 330, 334 (Tex.App.-San Antonio 1999, no pet.). Because DIW cannot assert collateral estoppel for the first time on appeal, we deny DIW's motion to dismiss for want of jurisdiction.

## FRANCHISOR LIABILITY AND CONTROL

### A. Standard of Review

We review a summary judgment *de novo.* *Ingalls v. Standard Gypsum, L.L.C.,* 70 S.W.3d 252, 255 (Tex.App.-San Antonio 2001, pet. denied). Under traditional summary judgment standards, a party moving for summary judgment has the burden of establishing as a matter of law that no genuine issue of material fact exists as to one or more essential elements of the plaintiff's cause of action. *Hughes Wood Products, Inc. v. Wagner,* 18 S.W.3d 202, 205 (Tex.2000); *U.S. Fire Ins. Co. v. Williams,* 955 S.W.2d 267, 268 (Tex.1997). In reviewing a summary judgment, an appellate court accepts as true all evidence supporting the non-movant. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 549 (Tex.1985). All inferences are indulged in favor of the non-movant, and all doubts are resolved in his favor. *Id.* "If the order is general, without specifying the grounds on which the trial court granted summary judgment, the nonmoving party on appeal must negate any grounds on which the trial court could have granted the order." *Basse Truck Line, Inc. v. First State Bank,* 949 S.W.2d 17, 19 (Tex.App.-San Antonio 1997, writ denied).

### B. Right of Control

Fitz contends that the trial court improperly granted DIW's motion for summary judgment because DIW "failed to negate a fact question as to whether DIW had the right to control the safety of its franchisee's driveway...." Whether DIW, as a hotel franchisor, owed a duty to Fitz is analyzed by the same legal principles governing the duties owed by a general contractor or premises owner. *See Dow Chem. Co. v. Bright,* 89 S.W.3d 602, 605–06 (Tex.2002); *see also Risner v. McDonald's Corp.,* 18 S.W.3d 903, 906 (Tex.App.-Beaumont 2000, pet. denied) (stating the liability of a franchisor regarding negligence on a franchisee's premises appears to be limited to those franchisors that maintain control of the activity concerning which negligence is charged). The right to control can be proven in two ways: (1) by evidence of a contractual agreement that explicitly assigns the premises owner a right to control; and (2) in the absence of a contractual agreement, by evidence that the premises owner actually exercised control over the manner in which the independent contractor's work was performed. *Dow Chem. Co.,* 89 S.W.3d at 606.

### 1. Contractual Right of Control

Fitz first argues that DIW had contractual control over the safety of SAHI's driveway through enforcement of detailed standards. "A contract may impose control upon a party thereby creating a duty of care." *Id.* at 606; *Elliott–Williams Co. v. Diaz,* 9 S.W.3d 801, 804 (Tex.1999). "For a general contractor to be liable for its independent contractor's acts, it must have the right to control the means, methods, or details of the independent contractor's work." *Elliott–Williams Co.,* 9 S.W.3d at 804. It is the contractual right of control which gives rise to a duty to see that an independent contractor performs work in a safe manner. *Dow Chem. Co.,* 89 S.W.3d at 606; *Elliott–Williams Co.,* 9 S.W.3d at 804. "[T]he control must relate to the injury the negligence causes, and the contract must grant the contractor at least the power to direct the order in which work is to be done." *Elliott–Williams Co.,* 9 S.W.3d at 804. Determining whether a contract gives a right to control is generally a question of law. *Dow Chem. Co.,* 89 S.W.3d at 606; *Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 783 (Tex.2001).

DIW's relationship with SAHI is governed by its License Agreement and Sys-

tem Standards Manual. The License Agreement provides that SAHI is an independent contractor. Section 16.1 of the License Agreement states the following:

> 16.1 Independence. *You are an independent contractor.* You are not our legal representative or agent, and you have no power to obligate us for any purpose whatsoever. We and you have a business relationship based entirely on and circumscribed of this Agreement. No partnership, joint venture, agency, fiduciary or employment relationship is intended or created by reason of this agreement. *You will exercise full and complete control over and have full responsibility for your contracts, daily operations, labor relations, employment practices and policies, including but not limited to, the recruitment, selection, hiring, disciplining, firing, compensation, work rules and schedules of your employees.*

Section 100.02(B) of the System Standards Manual provides:

> DIW may from time to time modify, change, or update the Standards content as appropriate. DIW may from time to time accept variations from the Standards content as appropriate for the locale of the project, and to meet special circumstances. Where total compliance is not possible, DIW may, in its sole discretion, waive strict compliance with certain requirements of the Standards. Any variance from the Standards must be approved in writing by DIW. *Failure to comply with the Standards may prevent approval of a project at final inspection, and in the case of an existing License, will constitute a breach of the applicable License Agreement and may result in termination of such License.*

(Emphasis added). With regard to the driveway, the System Standards Manual provides that the following should be met in the context of site planning:

> C. *Drives:* 24', two way, no dead-ends longer than 100' in length.
>
> G. *Traffic direction signs:* Provide signs as required to clearly delineate direction of traffic with special emphasis toward vehicle and pedestrian safety entering and leaving the property.

Fitz asserts the Licensing Agreement and System Standards Manual, considered together, take away almost all of SAHI's discretion in determining how to run the hotel because DIW has the right to direct many of SAHI's daily operations, including what uniforms the employees should wear and the amount of landscaping to be done. Accordingly, DIW retained contractual control over SAHI. Fitz further argues that the System Standards Manual sets out the "means, methods and details" of the hotel operations, including those related to pedestrian safety, parking lot design, and fencing implicated by Fitz's injury. Therefore, Fitz concludes that DIW is vicariously liable for failing to shut down SAHI's illegal and negligently maintained truck driveway.

DIW responds that such standards are general minimum standards set for its hotel franchisee to follow, but do not vest it with a contractual right of control. DIW provided evidence of this assertion with the deposition testimony of DIW's corporate representative, Wayne Miller ("Miller"), who stated that if a franchisee violates a provision of the System Standards Manual or state or local law, it will only issue or deduct points to a franchisee. If the franchisee obtains less than 370 points, DIW will issue a default letter directing the franchisee to correct the violation. The franchisee, however, retains the choice to correct the violation.

Looking at the record as a whole and viewed in a light most favorable to the

nonmovant, the summary judgment evidence shows that no provision in either the License Agreement or the System Standards Manual gave DIW the contractual right to control either the means, methods, or details of SAHI's maintenance and operation of the parking lot or the methods by which SAHI complied with the minimum standards set by DIW. Section 16.1 of the License Agreement specifically provides that SAHI is an independent contractor that will exercise full and complete control over and have full responsibility for its contracts and daily operations. Furthermore, DIW's setting general minimum operational standards for its hotel franchisee to follow did not negate the independent contractor provision of the license agreement. *See Dow Chem. Co.,* 89 S.W.3d at 606–07; *Smith v. Foodmaker, Inc.,* 928 S.W.2d 683, 687 (Tex.App.-Fort Worth 1996, no writ). We conclude, therefore, as a matter of law, the License Agreement and the System Standards Manual, taken together, do not impose a contractual duty on DIW.

### 2. Actual Right of Control

A premises owner who actually exercises control over the manner in which the independent contractor's work was performed may be subject to direct liability for negligence. *Dow Chem. Co.,* 89 S.W.3d at 607; *Koch Ref. Co. v. Chapa,* 11 S.W.3d 153, 155 (Tex.1999). Merely exercising or retaining a general right to recommend a safe manner for the independent contractor to perform their work is not enough to subject a premises owner to liability. *Id.;* RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965). The control must relate to the injury the negligence causes. *Dow Chem. Co.,* 89 S.W.3d at 607. In addition, if a premises owner exercises control by requiring a third party to comply with its safety regulations, the premises owner owes the third party a narrow duty of care that its safety requirements and procedures do not unreasonably increase the probability and severity of injury. *See id.* (discussing the narrow duty of care a premises owner owes a subcontractor's employee).

Fitz argues that DIW is directly liable because it negligently exercised actual control over SAHI. Specifically, Fitz first contends that DIW exercised actual control because it could enforce compliance with its System Standards Manual. As stated above, the System Standards Manual did not give DIW the right to control either the means, methods, or details of SAHI's maintenance and operation of the parking lot or the methods by which SAHI complied with the minimum standards. DIW contends that its ability to suspend or terminate a franchisee's operations if minimum standards are not followed is not a sufficient level of control to expose it to liability. We agree with DIW. It is not enough that a premises owner has merely the general right to preclude work from beginning or order the work stopped to establish actual control. *Id.* at 608–09. Likewise, DIW's general right to suspend or terminate a franchisee's operations is insufficient to establish actual control. *See id.*

Fitz next contends that DIW exercised control through its inspections of SAHI's premises and notices to cure. The System and Standards Manual provides that a DIW Quality Assurance Representative could perform four "no notice" inspections. DIW inspections included a "detailed review of . . . property grounds, parking areas, [and] all public areas. . . ." In his deposition, Miller stated that DIW could only deduct points from SAHI for any safety violations, but it could not compel SAHI to actually remedy the violation. As stated above, if SAHI received less than 370 points, then DIW could issue a notice to

cure letter stating that it was in default. If SAHI failed to cure the defect, then DIW could suspend it from participating in the DIW Reservation System or terminate the License Agreement. Fitz argues that these inspections enabled DIW to bring the hotel to account with respect to driveway safety. These inspections, however, are insufficient to establish actual control. There is no evidence that SAHI was not free to do its own work in its own way and there is no evidence that DIW controlled SAHI's method of work or its operative detail. *See id.* at 608.

Finally, Fitz argues that DIW exercised actual control because it waived its right to require SAHI to make the truck entrance safe for the public. Specifically, Fitz argues that by virtue of its inspections of the exterior grounds of Days Inn Southeast between 1995 and 2000, DIW knew about the city approved truck driveway and "negligently allowed" the hotel franchisee to make an unauthorized change for truck access. This evidence is insufficient to create a fact issue that DIW exercised affirmative acts of control over its franchisee, or specifically approved the allegedly dangerous condition of the driveway. "[A] general contractor has actually exercised control of a premises when the general contractor knew of a dangerous condition before an injury occurred and approved acts that were dangerous and unsafe." *See id.* at 609.

The summary judgment evidence shows that DIW established as a matter of law that it did not exercise sufficient contractual or actual control over SAHI to subject it to liability. Accordingly, the trial court properly granted summary judgment in favor of DIW. We affirm the summary judgment.