

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-19-00213-CV
_____

DULCE RESTAURANTS, L.L.C., APPELLANT

V.

TEXAS WORKFORCE COMMISSION, APPELLEE

On Appeal from the 353rd District Court
Travis County, Texas
Trial Court No. D-1-GN-17-000756; Honorable Scott Jenkins, Presiding

September 25, 2020

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, Dulce Restaurants, L.L.C., appeals from the trial court's judgment in favor of Appellee, the Texas Workforce Commission (TWC), that it take nothing in its suit for a refund of unemployment taxes paid under protest, after acquiring certain Krispy Kreme Doughnut Corporation (KKDC) stores. Dulce contends the trial court erred in (1) partially granting TWC's motion for summary judgment and partially denying its motion

for summary judgment on a theory of "continuity of control," a legal theory not raised by either party below, (2) relying on Dulce's relationship with its predecessor limited partner to uphold the transfer of the predecessor's unemployment compensation "experience rating"[1] and (3) upholding the transfer of Dulce's predecessor's unemployment compensation experience rating to Dulce.[2] We reverse and render in part and we reverse and remand in part for the entry of a judgment in accordance herewith.

## BACKGROUND

In 2013, Dulce purchased three Krispy Kreme stores in the Dallas metroplex area from North Texas Doughnuts, L.P., a Texas limited partnership with KKDC as its general partner. On July 11, North Texas and KKDC, as "Sellers," executed an Asset Purchase Agreement with Dulce as "Buyer." The agreement provided that "KKDC, as franchisor, and [Dulce], as franchisee, desire to enter into franchise agreements in form and substance satisfactory to KKDC." The franchise agreements required that Dulce continue to operate the stores in accordance with KKDC's franchise terms in order to protect its brand. A year later, Dulce acquired a fourth Krispy Kreme store in Lubbock from KK-TX I, L.P. and signed a separate Asset Purchase Agreement for that store. KKDC was not listed as a "Seller" on that agreement.

---

[1] An "experience rating" is a method by which TWC adjusts an employer's unemployment insurance premium to recognize the differences among qualifying employers by comparing the actual experience of an individual employer with that of the average employer in the same classification, resulting in a modification of their premium either up or down.

[2] Originally appealed to the Third Court of Appeals, sitting in Austin, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Third Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

After the sale of the four stores, in accordance with the Texas Unemployment Compensation Act,[3] TWC transferred each predecessor's employers unemployment compensation experience rating to Dulce.[4] The transfer resulted in higher unemployment taxes for Dulce for the years 2013, 2014, and 2015.[5] As required by statute, Dulce remitted payment of the taxes and interest due into its unemployment insurance account. It then requested an administrative hearing before TWC challenging whether each predecessor's employer compensation experience rating was properly transferred and seeking a refund of $286,889.56 for unemployment taxes and interest remitted. Following a hearing, Dulce's application for a refund was denied. A motion for reconsideration was also denied. After the adverse rulings, Dulce filed suit for *de novo* review on whether it was entitled to a refund.

The issue in the trial court as it pertains to the purchase of the three Krispy Kreme stores from North Texas was whether KKDC and North Texas, as Dulce's predecessor employing unit, retained "substantially common management or control" of the three stores sufficient for Dulce to be assigned North Texas's unemployment compensation experience rating. Both Dulce and TWC filed competing motions for summary judgment. Dulce alleged there was no substantially common management or control sufficient to justify the transfer of compensation experience from the three North Texas stores. It

---

[3] TEX. LAB. CODE ANN. § 204.002 (West 2015).

[4] An employer's unemployment "compensation experience" measures how frequently its former employees collect unemployment benefits and affects the employer's unemployment tax rate. TEX. LAB. CODE ANN. § 204.041-.044.

[5] The purchase of the store in Lubbock from KK-TX I, L.P. is not an issue in this appeal because the trial court ruled its compensation experience was improperly transferred to Dulce.

3

further alleged that KKDC was not a "predecessor employing unit" as contemplated by the Texas Labor Code.

By its cross-motion, TWC alleged the compensation experience rating was properly transferred to Dulce because both KKDC and North Texas directed or controlled "virtually every facet of Dulce's internal operations" as a franchisee. In contrast, Dulce maintained that TWC misapplied the law that authorizes a transfer of a predecessor's compensation experience rating.

At a telephonic hearing on the parties' motions held on January 26, 2018, the trial court suggested it could rule on a theory of "continuity of control," a theory not raised by either party in their respective motions for summary judgment, nor authorized by statute. Both parties objected that "continuity of control" was not a proper ground on which to grant summary judgment. On July 27, 2018, the trial court entered an interlocutory partial summary judgment granting TWC's summary judgment motion on the transfer of compensation experience rating from the three North Texas stores to Dulce, but denying the motion on the transfer of compensation experience rating from KK-TX I, L.P. (the Lubbock store) to Dulce as improper. The parties then filed *Stipulated Facts* on May 14, 2019, acknowledging the trial court's partial summary judgment order and stipulating that TWC did not owe Dulce a refund based on that order. The parties did not, however, waive the right to appeal the July 27, 2018 order. Based on those stipulations, the trial court rendered its final judgment that TWC properly transferred North Texas's compensation experience rating to Dulce and rendered that Dulce take nothing in its suit for a refund. Dulce appealed that final judgment.

4

**STANDARD OF REVIEW**

We review a grant of summary judgment under *de novo* standard of review. *Trial v. Dragon*, 593 S.W.3d 313, 316-17 (Tex. 2019). When, as here, both parties move for summary judgment, each party bears the burden of establishing that it is entitled to summary judgment as a matter of law. *City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 259 (Tex. 2018); *Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). When, as here, the trial court grants one motion for summary judgment and denies the other, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered. *Seabright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641-42 (Tex. 2015). Neither party can prevail because of the failure of the other to discharge its burden. *Tigner v. First Nat'l Bank*, 153 Tex. 69, 264 S.W.2d 85, 87 (1954).

When the trial court's order does not specify the grounds relied on for entry of summary judgment, we must affirm the judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). Conversely, when the trial court's summary judgment does specify a ground on which it was granted, we generally limit our review to that ground. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625-26 (Tex. 1996).

5

**APPLICABLE LAW**

The Texas Unemployment Compensation Act levies an unemployment tax on employers to fund Texas's unemployment benefits. TEX. LAB. CODE ANN. § 204.002 (West 2015). The applicable tax rate is based in part on an employer's compensation experience which measures how frequently the employer's former employees collect unemployment benefits. *Id*. at § 204.041-.044. Under the Texas Labor Code, the transfer of a predecessor employer's compensation experience to the successor employer is required if the "predecessor employing unit transfers all or part of the organization, trade, or business" and there is "substantially common management or control or substantially common ownership of the entities." *Id.* at § 204.083. (Emphasis added). "Substantially common management or control" exists if, after the acquisition, the predecessor employing unit continues to:

(A) own or manage the organization that conducts the organization, trade, or business;

(B) own or manage the assets necessary to conduct the organization, trade, or business;

(C) control through security or lease arrangements the assets necessary to conduct the organization, trade, or business; or

(D) direct the internal affairs or conduct of the organization, trade, or business.

*Id.* at § 204.081(a)(3) (West Supp. 2019).

**ISSUE ONE—"CONTINUITY OF CONTROL" AS A GROUND FOR SUMMARY JUDGMENT**

Dulce contends the trial court erroneously ruled against it on a theory of "continuity of control" because that theory was not raised by either party as a ground for summary

6

judgment, nor is it listed as a statutory definition of substantial common management or control.  We note that the only reference in the record to "continuity of control" is a letter from counsel for TWC in which counsel references the conference call held on January 26, 2018.  In that call, the trial court suggested it might rule differently on the transfer of North Texas's compensation experience rating than on the transfer of KK-TX I, L.P.'s compensation experience rating.  According to the letter, Dulce objected during the conference call and TWC objected in the letter.  Counsel took the position that TWC "[did] not believe the continuity of control existing because of Krispy Kreme Doughnut Corp.'s status as general partner of North Texas and franchisor of Dulce Restaurants, LLC meets the requirements that the predecessor employing unit continue to direct the internal affairs or conduct of the Stores under section 204.081(a)(3)(D)."

Both the trial court's partial summary judgment order and its final judgment are silent on what ground the trial court relied on in rendering its decision.  A trial court has no discretion to grant summary judgment on a ground not expressly stated in the motion.  *See* Tex. R. Civ. P. 166a(c).  *See also Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979).  A motion for summary judgment "must stand or fall on the grounds expressly presented in the motion."  *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993).

Ordinarily, a summary judgment cannot be affirmed on grounds not specifically set out in the motion.  *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993).  Prior to the 1978 amendments to Rule166a(c) of the Texas Rules of Civil Procedure, a summary judgment could be affirmed on appeal for reasons not expressly stated in the

motion. *Phil Phillips Ford v. St. Paul Fire & Marine Ins. Co.*, 465 S.W.2d 933, 937 (Tex. 1971) (granting summary judgment on a ground different from that specified in the motion). The effect of the amendments to the rule, however, is to unequivocally restrict a trial court's ruling to issues raised in the motion, response, and any subsequent replies. *Stiles*, 867 S.W.2d at 26 (citing *McConnell*, 858 S.W.2d 337 at 339-42). The rule should apply equally in the appellate court. *Stiles*, 867 S.W.2d at 26. Generally, granting a summary judgment on a ground not addressed in the motion is reversible error. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011). There are, however, limited exceptions (not applicable here) which have been recognized by some appellate courts. *Id.* (citations omitted). In recognizing these exceptions, appellate courts have always strictly construed those exceptions, lest the exception would "swallow the rule." *Id.*

Here, because neither the partial summary judgment order nor the final judgment specifies the ground relied on by the trial court, we must affirm the final judgment if any theory presented to the trial court is meritorious and preserved for appellate review. TWC's sole ground in support of its motion for summary judgment was whether the predecessor employer retained "substantially common management or control" following the sale of the three stores from KKDC and North Texas to Dulce. Thus, we focus our review on that ground and not on the unspecified and unrecognized ground of "continuity of control." As such, because we find the trial court's basis for transfer of the predecessor's unemployment compensation experience rating could not be based on a theory of "continuity of control," Dulce's first issue is rendered moot.

8

### ISSUES TWO AND THREE—TRANSFER OF PREDECESSOR'S COMPENSATION EXPERIENCE RATING

TWC asserts that North Texas, together with KKDC, sold the stores to Dulce and incorporated by reference the franchise agreements that Dulce was required to enter into with KKDC.  According to TWC, under those franchise agreements, Dulce agreed that everything it did would be subject to the direction and control of KKDC—just as it would if Dulce had purchased a franchised business from any other seller.

In response, Dulce contends that KKDC was not a predecessor employing unit as contemplated by the Labor Code and irrespective of the franchise agreements, KKDC did not have "substantially common management or control" over Dulce's day-to-day operations of the stores acquired from North Texas.  Dulce's position was that North Texas (and as a result, KKDC) ceased to have any control over the operation and management of the stores once the sale of those stores had closed.  KKDC's only control over the operations of the stores in question was that control that it had as a franchisor—not as a predecessor seller.  KKDC retained absolutely no control as a condition or result of being a seller in the sales transaction.

As such, we disagree with TWC's position that following the sale KKDC retained substantial common management or control of the internal affairs or conduct of Dulce's business as contemplated by section 204.081(a)(3)(D) of the Texas Labor Code.  Furthermore, KKDC did not (1) own or manage the business of the stores in question once the sale closed, (2) own or manage the assets necessary to conduct that business, or (3) control through security or lease arrangements the assets necessary to conduct that business.  *See id.* at § 204.081(a)(3)(A), (B), (C).

9

KKDC is a franchisor and Dulce is simply a franchisee with regard to its acquisition of the North Texas stores. A franchisor does not control a franchisee beyond what is necessary to protect and maintain its trademark, trade name, and good will. *See Smith v. Foodmaker, Inc.*, 928 S.W.2d 683, 688 (Tex. App.—Fort Worth 1996, no writ). Absent clear facts showing otherwise, under typical circumstances, a franchisee is an independent contractor. "A possibility of control is not evidence of a 'right to control' actually retained or exercised." *See Domino's Pizza, L.L.C. v. Reddy*, No. 09-14-00058-CV, 2015 Tex. App. LEXIS 2578, at *15 (Tex. App.—Beaumont March 19, 2015, pet. denied) (mem. op.), cert. denied, __ U.S. __, 137 S. Ct. 395, 196 L. Ed. 2d 296 (2016) (citation omitted).

In support of its cross-motion for summary judgment, TWC relies heavily on the Asset Purchase Agreement among KKDC, North Texas, and Dulce as well as the franchise agreements between Dulce and KKDC. TWC insists that North Texas continued to exercise substantial control and management of the three stores purchased by Dulce "even after the transfer." According to TWC, those franchise agreements directed "virtually every aspect of how Dulce must operate the organization, trade, and business."

In support of its motion for summary judgment, Dulce presented an affidavit from an attorney who served as general counsel for an entity that provided services to Dulce. According to the attorney, Dulce is an independent contractor solely responsible for the day-to-day operations of its stores. Dulce and its predecessor employing unit, North Texas, are entirely separate entities and, after the sale from North Texas to Dulce, the

10

franchise agreements pertaining to the stores in question between North Texas and KKDC terminated and North Texas had no further involvement with the operation or control of those stores. Dulce then entered into its own franchise agreements with KKDC.

Dulce's summary judgment motion was also supported by other relevant documentation. KKDC's standard franchise agreement was submitted as evidence. Incorporation of the franchise agreements between Dulce and KKDC into the Asset Purchase Agreement did nothing more than establish Dulce's responsibility to protect KKDC's brand. Additionally, paragraph 26 of the franchise agreements describes the relationship between the parties. Specifically, paragraph 26.1 provides that there is no fiduciary relationship between the parties and that "Franchisor and Franchisee, as between themselves, are and will be independent contractors."

The evidence submitted by Dulce established that after it purchased the three stores from North Texas, it had no further relationship or dealings with North Texas that would show "substantially common management or control" by North Texas to justify transferring its unemployment compensation experience rating to Dulce. Even though KKDC was listed as a "Seller" on the Assert Purchase Agreement, the summary judgment evidence showed that KKDC was merely a franchisor and did not have "substantially common management or control" over Dulce's day-to-day operations of the North Texas stores beyond those set forth in the franchise agreements. The franchise agreements describe KKDC and Dulce as independent contractors. A franchisor's minimal operational standards do not negate a franchisee's status as an independent contractor. *See Fitz v. Days Inn Worldwide, Inc.*, 147 S.W.3d 467, 473 (Tex. App.—San Antonio

2004, pet. denied). *See also White v. DR & PA Deliverance*, *Ltd.*, No. 01-12-00227-CV, 2014 Tex. App. LEXIS 2091, at *6 (Tex. App.—Houston [1st Dist.] Feb. 24, 2014, no pet.) (mem. op.) (finding that an "occasional assertion of control or sporadic action directing the details of the work" is not sufficient to destroy a party's status as an independent contractor).

Dulce established as a matter of law that its predecessor employing unit, North Texas, had no substantially common management or control over the three stores purchased by Dulce after they were sold. Dulce's evidence also established that its relationship with KKDC was that of franchisor and franchisee acting as independent contractors. As such, we find KKDC did not have substantial management or control of Dulce's day-to-day operations.

Because TWC did not establish its entitlement to summary judgment as a matter of law, the trial court erred in granting its partial summary judgment. Regarding Dulce's motion for summary judgment, we find it established as a matter of law that TWC improperly transferred the unemployment compensation experience rating of North Texas to Dulce resulting in an overpayment of unemployment taxes. Thus, the trial court also erred in denying Dulce's motion for summary judgment. Presented here with cross-motions for summary judgment, we are required to render the judgment the trial court should have rendered. Accordingly, Dulce's motion for summary judgment is hereby granted and it is ordered that Dulce recover a refund of $286,889.56 for unemployment taxes overpaid for the years 2013, 2014, and 2015, together with interest thereon as provided by law. Issues two and three are sustained.

**CONCLUSION**

The trial court's judgment is reversed and judgment is hereby rendered that Dulce Restaurants, L.L.C. recover from the Texas Workforce Commission a refund in the sum of $286,889.56, reflecting the increase in unemployment taxes paid as the result of the improper transfer of North Texas Doughnuts L.P.'s unemployment compensation experience rating to Dulce Restaurants, L.L.C., and we remand this matter to the trial court for the entry of a proper judgment as provided herein, together with interest thereon and costs of court, as provided by law. Upon entry thereof, the clerk of the trial court is ordered to furnish a copy of that judgment to the clerk of this court.


Patrick A. Pirtle
Justice